No. 12413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

———————————

GEORGE M. WASHINGTON,

                    Plaintiff and Respondent,

    -vs-

HESTER P. WASHINGTON,

                    Defendant and Appellant.

———————————

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Hutton, Schiltz and Sheehy, Billings, Montana
        John C. Sheehy argued, Billings, Montana

    For Respondent:

        Ryan and Beiswanger, Billings, Montana
        Robert P. Ryan argued, Billings, Montana

———————————

                            Submitted:  June 20, 1973

                            Decided JUL 12 1973

Filed JUL 12 1973

Thomas J. Kearney
                                        Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by the defendant, Hester P. Washington from an order modifying and amending a decree of divorce which contained a property settlement agreement executed by the parties. The district court of the thirteenth judicial district in Yellowstone County ruled that the plaintiff, George M. Washington, should no longer be obligated to pay "alimony" to the defendant as provided in their property settlement agreement. From this ruling the defendant, Hester P. Washington, appeals.

This suit was previously argued before this Court on March 2, 1973, and in the opinion of March 23, 1973, we stated in Washington v. Washington, ____Mont.____, 507 P.2d 1071, 30 St.Rep. 340, 343:

> "Therefore it is the opinion of this Court that upon the issues raised by the appellant (Hester P. Washington), the record is inadequate except as to the sole issue whether or not as a matter of law the alimony provision of the property agreement was integral to the agreement and not severable and as such was not subject to modification by the court.
>
> "As to any and all other issues attempted to be raised by appellant, the motion to dismiss is granted."

The present appeal therefore is limited to this one issue.

This action commenced on February 4, 1970, when George M. Washington, as plaintiff (hereinafter called husband) filed a complaint in the district court seeking a divorce from the defendant wife. In his complaint, husband recited, in addition to the usual allegations as cause for divorce, that the parties had three grown children; that they were attending college and capable of deciding for themselves as to their custody, and that in any event plaintiff was willing to provide for their support.

The complaint had no provision in it for support money for the wife, it being alleged simply in paragraph 6 of the complaint that:

> "The parties have acquired during their marriage certain real and personal property and plaintiff (husband) requests that said property to be partitioned and divided equitably between the parties."

To husband's complaint defendant wife filed her answer and cross claim for divorce. In her cross claim defendant wife did not ask for support moneys,

but recited essentially what was stated in plaintiff's complaint:

> "9. The parties have acquired during their marriage certain real and personal property and defendant requests that said property be partitioned and divided equitably between the parties."

During the pendency of the divorce action the parties, both represented by counsel, reached a property settlement agreement on January 27, 1971. The agreement was signed by the parties and by their counsel. The salient features of the property settlement agreement are these:

1. The parties were the parents of three grown boys, and no provision was made for their support or custody.

2. The parties were the owners of substantially all of the capital stock of Cherry Tree Inn, a Montana corporation, and the agreement provided for the transfer of shares of stock from the husband's name to the name of the wife so that after the agreement was consumated the wife owned 21,775 shares of such stock, and the husband one share less, 21,774 shares. The husband's stock was subject to a pledge for indebtedness to the Midland National Bank of Billings for $35,000, and the wife agreed to assume $10,000 of that indebtedness.

3. The wife received the sole ownership of the family home, formerly held in joint tenancy, worth $73,000, but subject to a mortgage in the sum of $26,100.

4. Insurance policies on the husband's life were delivered to the wife. They had substantially no cash value because of loans.

5. The husband recognized that the wife had worked for the corporation, Cherry Tree Inn, without a salary for three years and that she was entitled to receive back salary of $21,000 for her services to the corporation. This was done by increasing her monthly salary for the services she actually performed for the corporation for a period of three years. It was agreed that the wife, while she continued as operating manager of Cherry Tree Inn, should receive a salary from that corporation of $600 a month and the right to the use of an apartment in the Inn premises for residence purposes.

6. The husband agreed to pay to the wife, as alimony, the sum of

$81,000 over a period of nine years, beginning February 1, 1971, in monthly payments of $750 per month. The husband's obligation continued if the wife remarried and was a charge upon his estate if he died before the full payment was made. Her death terminated the right to subsequent payments.

7.  This provision required the husband to pay for bills and obligations incurred prior to the divorce. Each party thereafter paid his own obligations, including his costs and attorney's fees in the divorce.

8.  The wife accepted the provisions of the agreement in full satisfaction of all right of support from the husband and relinquished all interest which she might have in the separate property of the husband except for a security lien on the Cherry Tree Inn corporate stock, and particularly she released any interest in the M & R Building owned by the husband before the property settlement agreement and after.

9.  Each party agreed to execute any necessary documents.

10.  The parties agreed that the agreement should be filed with the court and incorporated by reference into the decree of divorce.

On December 31, 1971, divorce was granted to the wife. In the decree of divorce the decree incorporated the property settlement agreement of January 27, 1971. In the decree it was ordered that the judgment should not constitute a lien on any property, real or personal, owned by the plaintiff husband, except that the wife had a lien on the stock of the parties owned in Cherry Tree Inn, Inc. to secure payments due from the husband to the wife under the property settlement agreement.

Following the divorce of the parties their interest in Cherry Tree Inn was sold. Subsequently the wife, alleging arrears in the payments to her by the husband, filed her affidavit and petition for security for property settlement payments, requesting the district court to make the proceeds from the sale of Cherry Tree Inn which were being received by the husband subject to the indebtedness for the alimony provision in the contract, which we set forth in full, as follows:

"The Husband agrees to pay to the Wife, as alimony, the sum of $750.00 per month, commencing February 1, 1971, and payable on the first day of each month thereafter for a period of nine years from that date, making a total payment of $81,000. The Husband's obligation to make said payments shall not be affected by the remarriage of the Wife, but will terminate immediately in the event of her death during said period. If the Husband dies during said period, the balance remaining due to the Wife hereunder shall be accelerated and shall be an obligation for which his estate shall be liable."

To the wife's petition, the husband responded with a petition for modification of the divorce decree alleging changes in conditions and asking the court to delete entirely the provisions of the property settlement agreement for the payment of alimony.

In her answer to husband's petition for modification of decree of divorce, wife set forth a second defense to the effect that the property settlement agreement "is based upon a contractual agreement between the parties based on their property, and is not subject to change because of alleged changes in conditions following the contractual agreement."

As before stated, the sole issue that this Court must decide is whether or not as a matter of law the alimony provision of the property agreement was integral to the agreement and not severable, and as such was not subject to modification by the district court.

We hold that the district court erred in modifying and setting aside the "alimony" provision of the property settlement. The "alimony" was an integral part of the property settlement agreement and was not severable, and this settlement agreement was fully supported by consideration from the wife and could not be changed without the consent of both parties.

In the property settlement agreement, the payments to the wife for nine years were labeled as "alimony", but, as is apparent from the agreement the payments were not in fact alimony per se, and the use of the term "alimony" was only a label.

One cannot sever the support provision from the property settlement agreement between the parties without destroying the contract. In consideration of the agreement, the wife gave up the right to any future support,

- 5 -

agreed to pay all of her own obligations incurred by her after the agreement, and relinquished all claims against property owned by the husband except for a security interest in the Cherry Tree Inn stock. Additionally she agreed to assume $10,000 of the husband's liability.

The provisions of paragraph 6 of the property settlement agreement alone, evidence the fact that the payments were not "alimony" in the intent of the parties. The statutory definition of alimony (section 21-139, R.C.M. 1947) provides that upon proof of remarriage of a divorced wife, the court must order modification of the decree. The agreement between the parties in this case, however, provides that the alimony payments were to be made irrespective of the remarriage of the wife. Moreover, if the husband died, the unpaid balance of the alimony was a charge upon his estate, irrespective of her financial circumstances at the time. The other contingency under the agreement terminating the alimony payments was the death of the wife before final payment.

The problem facing the Court in this case with respect to the property settlement agreement is precisely that faced by the California court in Helvern v. Helvern, /294 P.2d 482, 483 (Calif., 1956), as stated:

139 C.A.2d 819,

> "The main problem involved in this case is whether a separation agreement entered into by husband and wife dividing their property and providing for the support of the wife was an integrated property settlement agreement which cannot be modified, or whether the support provisions are severable, and therefore subject to modification. The trial court ruled, as a matter of law, that the agreement was an integrated property settlement agreement and not subject to modification. The husband appeals. We agree with the interpretation of the trial court."

In Helvern the husband and wife entered into an agreement settling their property rights, and the husband agreed to pay the wife $250 per month so long as she remained single. In the event of the death of the husband prior to that of the wife, the wife had a claim against the estate of the husband for unpaid alimony, computed in accordance with a mortality table of expectancy. The payments to the wife were labeled in the agreement "'as alimony and for her maintenance and support'". The wife waived all rights

- 6 -

of inheritance in the husband's estate and each party agreed that the agreement was a full, complete and final adjustment of their property rights and that neither party would at any time make or attempt to make any further or other claims against the other except arising out of the agreement.

The events that occurred following the decree of divorce in Helvern parallel the case at bar. The divorce judgment in Helvern was granted in 1949. In 1954, the husband filed a motion for an order to show cause why the decree of divorce should not be modified to reduce the "alimony" payments on the grounds of changed conditions. There the material changes contended for were that at the time of the agreement the husband was earning as a certified public accountant $14,000 a year, but that he was now earning but $3,500 a year. Further it was alleged that at the time of the agreement the husband was free from debt, but now he owed in excess of $10,000. The trial court sustained an objection to any evidence under the motion, saying that the property settlement agreement was a final determination between the parties, involving the rights of both parties, including the rights of plaintiff to support by the defendant, and the right to share in the community property of the plaintiff, and the court had no jurisdiction to modify or amend the final decree of divorce.

On this state of facts the California Court said:

"The law in this state is well settled that if support provisions have been made an inseverable part of the agreement between husband and wife to divide their property, and the court in the divorce action approves the agreement, the provisions of such agreement cannot thereafter be modified without the consent of both of the contracting parties. The leading case on the subject is Adams v. Adams, 29 Cal.2d 621, 177 P.2d 265. * * *"

" * * *

"'The second category includes, among others, contracts in which the "support and maintenance" provisions are not in the nature of alimony but are part of the division of property. This category also includes contracts that provide solely for the payment of monthly or lump sums "in lieu of community property". Such contracts must be treated like other property settlement agreements dealing solely with divisions of property [citation]. If the contract was not fraudulent when made, and there was

no violation of a confidential relationship, it will be binding on the court and there can be no modification of the payments after the decree without the consent of the parties.[citation]. The court in the divorce action may grant alimony to the wife and approve the agreement as well, since these agreements purport to deal only with the division of the property of the parties. * * *

"'The third category includes contracts <u>in which the wife waives all support and maintenance, or all support and maintenance except as provided in the agreement</u>, in consideration of receiving a more favorable division of the community property. The court cannot add a provision for alimony to such contracts without changing basically the agreement of the parties as to the division of their property.'" (Emphasis ours.)

We find that the order of the district court modified a contractual agreement between the parties and is in error for the reasons hereinbefore set forth.

The order of modification is reversed and the cause remanded to the district court with instructions to dismiss the husband's petition for modification of the divorce decree, each party to bear his or her own costs on this appeal.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Associate Justices

- 8 -