No. 12225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

ARTHUR J. MOVIUS,

                    Plaintiff and Respondent,

    -vs-

ALICE J. MOVIUS,

                    Defendant and Appellant.

Appeal from:  District Court of the Thirteenth Judicial District,
              Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

    For Appellant:

        Sandall, Moses and Cavan, Billings, Montana
        John J. Cavan, Jr. argued, Billings, Montana

    For Respondent:

        Michael J. Whalen argued, Billings, Montana

                              Submitted:  November 29, 1973

                              Decided: JAN 10 1974

Filed: JAN 10 1974

Thomas J. Kearney
                                        Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

A former wife filed a contempt action against her divorced husband alleging failure on his part to make monthly alimony payments and provide security therefor pursuant to a written agreement between them which had been approved by the court and incorporated into the divorce decree. The divorced husband applied for a reduction of such monthly alimony payments based upon a change in circumstances since entry of the original decree. The district court of Yellowstone County, the Hon. Alfred B. Coate, district judge presiding without a jury, entered an order adjudicating the former husband not in contempt and reducing the monthly alimony payments from $500 to $100 effective from the date of filing of the petition for modification. Following denial of her motion for a new trial, motion to amend the judgment and exceptions to the findings of fact and conclusions of law, the former wife appeals.

Appellant is Alice J. Movius, the former wife. Respondent is Arthur J. Movius, the divorced husband. They will hereafter be referred to as Alice and Arthur respectively.

Alice and Arthur were married in 1956 and no children were born as issue of the marriage. For many years prior to this divorce, Arthur was a physician and partner in the Billings Clinic in Billings, Montana and earned a substantial income from his profession. Both real estate and personal property were acquired during the course of this marriage.

Various difficulties arose between them culminating in Arthur's filing of a divorce complaint against Alice on October 14, 1966, in the district court of Yellowstone County. Alice answered his complaint and filed a cross-complaint seeking (1) a divorce, (2) alimony, (3) attorney's fees, and (4) costs. Before the matter was heard by the district court, Alice and

Arthur, through their respective attorneys, negotiated a written agreement settling their property rights, support for Alice, and all other claims of each against the other.

The salient features of this agreement were:

(1) An agreement to live separate and apart from each other.

(2) An agreement by each to release the other from any claims or obligations except as provided in the agreement and making each party thereafter liable for his or her own personal and separate obligations.

(3) A provision that the agreement not become effective until a valid decree of divorce was entered in which the agreement was approved and ratified by the court and incorporated in the decree and "which decree shall contain no provision for the Husband to pay any alimony, support or maintenance except as herein provided in this agreement which shall be and constitute an integrated part of the said decree".

(4) A provision for division of household finishings, yard equipment, tools and appliances.

(5) An agreement by Arthur to pay Alice $500 per month for her support and maintenance until Arthur reaches age 65, then the sum shall be reduced to $300 per month until Arthur reaches age 70 when it shall terminate absolutely. The monthly payments would also terminate in the event of Alice's remarriage. Upon request of Alice, Arthur agreed to apply for disability insurance that would pay an amount equal to the payments for Alice's support and maintenance, with the premiums to be paid by Alice. Arthur agreed that upon termination of his association with the Billings Clinic to place $18,000 in trust as security for the monthly payments to Alice, ownership of said $18,000 trust fund to remain in Arthur.

- 3 -

(6) An agreement by Arthur to pay Alice $1,000 attorney's fees.

(7) An agreement by Alice to quit claim her joint interest in the family house to Arthur, and Arthur's agreement to pay her $15,000 therefor.

(8) An agreement by Arthur to assign an insurance policy to Alice and make her beneficial owner, with Alice paying the annual premiums.

(9) An agreement by Arthur to contribute $2,500 toward the purchase of a car for Alice.

(10) A provision that the agreement "shall be and operate as a complete property settlement between the parties and there is no other agreement between the parties except as herein specifically set forth."

This agreement was dated June 2, 1967. A decree was entered by the district court on June 5 providing: (1) Alice was granted a divorce from Arthur; (2) the property settlement agreement was ratified, approved and adopted by the court, incorporated into the decree, and both parties were bound thereby.

Arthur remarried shortly thereafter. His association with the Billings Clinic terminated June 30, 1967.

On September 28, 1970, Alice instituted contempt proceedings against Arthur alleging his failure to make the payments required by the divorce decree and his failure to establish the $18,000 trust fund as security therefor.

On February 24, 1971, Arthur applied for reduction of monthly support and maintenance payments from $500 to not more than $150. He alleged changed circumstances since entry of the decree involving a substantial reduction in income, deterioration of health and the ability of Alice to provide for her own support and maintenance.

- 4 -

Both matters came on for a consolidated hearing before Judge Coate on March 26, 1971. Findings of fact and conclusions of law were entered on November 3 and an order or judgment was entered on November 9. The substance of the order or judgment was that Arthur was not guilty of contempt, that Arthur was obligated to pay Alice all accrued support money owed under the original decree to the date of Arthur's application for modification (February 24, 1971) and thereafter support money payments were reduced to $100 per month.

Following denial of Alice's motion for new trial, motion to amend the judgment, and exceptions to the court's findings of fact and conclusions of law, Alice appealed from the judgment.

The issues on appeal are twofold:

(1) Is the original decree of the court ratifying, adopting and incorporating the property settlement agreement of the parties subject to subsequent modification by the court?

(2) If so, did the district court commit error by modifying the accrued alimony payments retroactively?

Directing our attention to the first issue, the underlying question is whether the alimony provision of the property settlement is integral and not severable from the rest of the agreement and as such not subject to subsequent modification by the court. This question was recently before this Court in Washington v. Washington, _____ Mont._____, 512 P.2d 1300, 30 St. Rep. 674. There we held that the alimony provisions of that particular agreement were not in fact alimony payments at all, but instead were an integrated part of a property settlement which could not be severed therefrom without destroying the contract, and accordingly were not subject to subsequent modification by the court.

We reaffirm the principles announced therein, the authorities

cited in support, and the rationale applied to resolution of the question. Here, however, although the agreement bears some similarities to the agreement in Washington, its differences command an opposite result. In Washington the wife didn't seek alimony or support in the divorce action but both parties simply sought an equitable settlement of property rights; the agreement incorporated in the decree in Washington provided that the payments labeled as alimony continued if the wife remarried and become a charge against the husband's estate if he died prior to payment in full; the agreement provided that the wife would assume a pre-existing liability of $10,000 against some of the property.

Here, unlike Washington, Alice sought an alimony award for her support and maintenance in her crossclaim for divorce, and the divorce decree made such an award pursuant to the agreement of the parties. The alimony payments to Alice terminated absolutely in the event of her remarriage. The agreement here is silent on liability for future payments in the event of death of either Alice or Arthur. The alimony provisions here are clearly alimony and not payments in settlement of property rights. Here Alice assumed no liability for any pre-existing indebtedness nor is there any evidence indicating that she gave up anything in the way of support and maintenance in consideration of receiving a more favorable division of the property acquired during their marriage.

In short, here there is no interrelationship between the alimony provisions and the property division that would destroy the rest of the contract if the amount of alimony payments were modified by the court. Absent such mutual interdependency, the alimony provisions of the agreement incorporated in the decree are not an integral part of the property settlement but are in all respects separable therefrom and subject to subsequent mod-

ification by the court in its discretion on a proper showing of changed circumstances. This discretion of the district court was properly exercised here as the evidence indicates a drastic change in financial circumstances of the husband and deterioration of the husband's health.

The second issue is whether or not the reduction of alimony payments by the court can be made effective as of the date of Arthur's application for modification rather than the date of the court's order reducing the payments. Here there was approximately a nine-month interval between Arthur's application for reduction and the court's order therefor. The amount involved is about $3,600.

This precise issue has not heretofore been ruled upon by this Court. The majority rule is that courts may cancel arrears of alimony, separate maintenance, or support which accrued after the filing of a motion for modification of the decree and prior to the entry of the order based upon such a request for relief. 6 A.L.R.2d 1328 and cases cited therein; A.L.R.2d Later Case Service, p. 845 and the following recent cases: Fioravanti v. Fioravanti, C.C.A., D.C., 231 F.2d 776; Goodman v. Goodman, 173 Neb. 330, 113 N.W.2d 202.

Montana cases considering the related problem of retroactive modification of decrees for past due alimony predating the application for modification are: Woehler v. Woehler, 107 Mont. 69, 81 P.2d 344 (permitting such retroactive modification in a separate maintenance action under a statute providing for enforcement by orders which may be varied, altered or revoked by the court); Porter v. Porter, 155 Mont. 451, 473 P.2d 538 (suggesting that such retroactive modification in a divorce action is improper under statute permitting court to modify alimony orders).

In our view the problem of retroactive modification in its broad sense is not presented by this case. Section 21-139, R.C.M. 1947 is sufficiently broad to permit the court to make an order modifying alimony payments effective as of the date of application therefor. The relief sought is based on changed conditions that exist at the date of filing the petition for modification, so no compelling reasons appear to us why a court, in its discretion, cannot award applicant relief from that date onward.

The judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 8 -