No. 12869

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

ADDIE F. TAYLOR,

Plaintiff and Appellant,

-vs-

JAMES E. TAYLOR,

Defendant and Respondent.

---

Appeal from:   District Court of the Thirteenth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Robert L. Stephens, Jr. argued, Billings, Montana

For Respondent:

Berger, Anderson, Sinclair and Murphy, Billings, Montana
James J. Sinclair argued, Billings, Montana

For Amicus Curiae:

Honorable Robert L. Woodahl, Attorney General, Helena,
Montana
James F. Walsh, III argued, Assistant Attorney General,
Helena, Montana

---

Submitted:  May 9, 1975

Decided:  JUN 10 1975

Filed:  JUN 10 1975

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Yellowstone County, the Honorable Nat Allen presiding. The judgment modified a divorce decree entered June 23, 1965, by striking those portions referring to the payment of alimony. Appellant Addie F. Taylor was granted a divorce from respondent James E. Taylor. The divorce decree provided that a property settlement agreement be incorporated into the decree.

The property settlement agreement was dated June 16, 1965. It recited that husband and wife had lived separate and apart for many months; the wife intended to file for divorce; and, it was the desire of both to settle and adjust between themselves their respective property rights and all claims each may or might have against the other. Then followed nineteen separate paragraphs, the salient features of each are:

1) An agreement to be free from interference.

2) An agreement to release each other from all claims, except as provided in the agreement.

3) An agreement by the husband to pay all current bills.

4) An agreement by the husband to support an adult daughter at her California residence.

5) An agreement to furnish a list of all obligations.

6) The parties are not limited in their remedies at law or in equity for the enforcement of either this agreement or the decree.

7) The husband can claim the minor son as an income tax deduction.

8) Personal property items.

9) Transfer of one car to each.

10) Husband to handle income tax items and receive all refunds.

11) Husband to execute a $1,000 note to be paid off at $25 per month for release of wife's claim on a check for $5,500, which was payable jointly on the sale of mineral property in North Dakota.

12) Husband agrees to transfer the home to the wife and to pay the loan, taxes and insurance obligations.

13) Husband agrees to pay support money for minor son and to pay for a college education.

14) Small income checks endorsed to wife.

15) "The husband agrees to pay to the wife the sum of Four Hundred and no/100 Dollars ($400.00) per month beginning June 1, 1965, as alimony, and a like sum each and every month thereafter."

16) Husband will pay balance due on furniture contract.

17) Each will execute instruments necessary to effect this agreement.

18) "This agreement is made and entered into freely and voluntarily by each of the parties, and it shall operate as a complete property settlement between them."

19) "It is understood that this is not an agreement to obtain a divorce, but in the event that either of the parties hereto shall obtain a decree of divorce from the other, then this agreement is to be made a part of any Decree headed (sic) by the Court."

The complaint for divorce by the wife recited that there were three children, two of age, and one, a son, a minor. Custody was granted the mother with support as provided in paragraph 13, for the minor son. Without further explanation or reference in the complaint or decree, except by reference, paragraph 4 provided for support of a daughter, of age, in California.

The decree provided specifically for custody and support of the minor son. It then provided for alimony at $400 per month,

as agreed in paragraph 15; but limited the payments until re-marriage. Then, the property settlement agreement was incorporated in the decree and the wife awarded her costs and attorney fees.

The petition by James E. Taylor, defendant in the divorce case is simple. It recites the decree provision for alimony and the property settlement agreement, as noted above, then alleges: (1) that the alimony provision is based on section 21-139, R.C.M. 1947; (2) that Article II, Section 4, 1972 Montana Constitution provides in pertinent part that "* * * The State * * * shall [not] discriminate against any person * * * on account of * * * sex * * *." and (3) that section 21-139 is unconstitutional in that it violates Article II, Section 4, 1972 Montana Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.

In response to the petition, Addie Taylor alleged: (1) the alimony provision was not based upon section 21-139 but, rather, was the result of an agreement and contract; (2) in any event, even if section 21-139 is unconstitutional under the 1972 Montana Constitution, this would be an impermissible ex post facto appli-cation; and, (3) the alimony statute, section 21-139, R.C.M. 1947, is constitutional and reflects a valid public policy consideration.

Hearing was had and ex-wife Addie testified the alimony provision in the property settlement agreement was made as an accommodation to the husband and was accepted in lieu of a distribution of other property. Addie testified:

> "I was going to ask for a set amount, and Jim said that he could not come up with that amount of money, so we decided on alimony payments in lieu of a cash settlement * * *."

The district court found that section 21-139, R.C.M. 1947, permitting the court to award alimony to a wife in a divorce proceeding where the divorce is granted for an offense of the husband is in violation of Article II, Section 4, 1972 Montana Constitution. The court then ordered stricken the alimony provisions in the divorce decree.

- 4 -

The issues on appeal, as stated, go to the constitutional questions involved. However, in our view, the case can be determined, not on constitutional grounds, but, rather, on contract rights. If the decree is one not subject to modification as alimony, but rather one of contract, no constitutional problems arise. Constitutional issues will not be determined if the case may be determined on nonconstitutional grounds. See: Montana State University v. Ransier, _____Mont._____, ____P.2d _____, 32 St.Rep._____, and cases cited therein.

In Washington v. Washington, 162 Mont. 349, 512 P.2d 1300, this Court considered whether or not, as a matter of law, the alimony provision of a property settlement agreement was integral to the agreement and not severable and as such not subject to modification by the court. On appeal, this Court analyzed the agreement that was incorporated into the decree and held that the "alimony" was an integral part of the property settlement agreement and was not severable, and the settlement agreement was fully supported by consideration from the wife and could not be changed without the consent of both parties. The Court then went on to state that the payments were not alimony per se and the use of the term alimony was only a label.

In Movius v. Movius, 163 Mont. 463, 517 P.2d 884,886,887, 31 St.Rep. 29, this Court considered another property settlement agreement that was incorporated into a decree. The Court stated:

"Directing our attention to the first issue, the underlying question is whether the alimony provision of the property settlement is integral and not severable from the rest of the agreement and as such not subject to subsequent modification by the court. This question was recently before this Court in Washington v. Washington, _____Mont._____, 512 P.2d 1300, 30 St.Rep. 674. There we held that the alimony provisions of that particular agreement were not in fact alimony payments at all, but instead were an integrated part of a property settlement which could not be severed therefrom without destroying the contract, and accordingly were not subject to subsequent modification by the court.

- 5 -

"We reaffirm the principles announced therein, the authorities cited in support, and the rationale applied to resolution of the question. Here, however, although the agreement bears some similarities to the agreement in Washington, its differences command an opposite result. In Washington the wife didn't seek alimony or support in the divorce action but both parties simply sought an equitable settlement of property rights; the agreement incorporated in the decree in Washington provided that the payments labeled as alimony continued if the wife remarried and became a charge against the husband's estate if he died prior to payment in full; the agreement provided that the wife would assume a pre-existing liability of $10,000 against some of the property.

"Here, unlike Washington, Alice sought an alimony award for her support and maintenance in her crossclaim for divorce, and the divorce decree made such an award pursuant to the agreement of the parties. The alimony payments to Alice terminated absolutely in the event of her remarriage. The agreement here is silent on liability for future payments in the event of death of either Alice or Arthur. The alimony provisions here are clearly alimony and not payments in settlement of property rights. Here Alice assumed no liability for any pre-existing indebtedness nor is there any evidence indicating that she gave up anything in the way of support and maintenance in consideration of receiving a more favorable division of the property acquired during their marriage.

"In short, here there is no interrelationship between the alimony provisions and the property division that would destroy the rest of the contract if the amount of alimony payments were modified by the court. Absent such mutual interdependency, the alimony provisions of the agreement incorporated in the decree are not an integral part of the property settlement but are in all respects separable therefrom and subject to subsequent modification by the court in its discretion on a proper showing of changed circumstances."

Heretofore, we have set forth the paragraphs of the agreement here and how they were adopted by reference in the decree and changed in part. Similarities to the agreements in both Washington and Movius exist. We hold that the contract here is more like that in Washington. The testimony of Addie Taylor, not disputed, makes clear that the agreement was an independent bargain. Thus, whether section 21-139, R.C.M. 1947, is constitutional or not has no bearing since the "alimony" was part of a negotiated settlement of the parties respective property rights. Obligations of a contract executed in 1965 cannot be invalidated by subsequent passage of any law.

Thus, we hold the alimony provision of the property settle-

ment / as incorporated into the decree of divorce, was intended to act as an inseverable contractual provision of the agreement and not impairable by a subsequent change in the law, if indeed there is.

Accordingly, we reverse the judgment and remand the matter to the district court for entry of judgment for appellant. We do not award attorney fees as requested since no pleading for such was made; nor, under our holding here that the agreement was contractual could any attorney fee be awarded. Appellant shall have her costs.

_Wesley Castles_
Justice

We Concur:

_____
Chief Justice

_John Conway Harrison_

_Frank I. Haswell_

_Gene B. Daly_
Justices.