No. 13891

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

IN RE THE MARRIAGE OF

FLORENCE A. REILLY,

Petitioner and Respondent,

-vs-

RUDDY RAYNER REILLY,

Respondent and Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Respondent:

Church, Harris, Johnson & Williams, Great Falls,
Montana
Cresap S. McCracken argued, Great Falls, Montana

For Appellant:

Marra, Wenz, Iwen and Johnson, Great Falls, Montana
David Hopkins argued, Great Falls, Montana

---

Submitted:  January 18, 1978

Decided: APR 13 1978

Filed: APR 13 1978

<u>Thomas J. Kearney</u>
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the judgment entered by the District Court, Cascade County. The court dissolved the marriage of the parties, awarded custody of the minor child to the wife, required the husband to pay child support of $100 per month plus all medical expenses incurred on behalf of the child, required the husband to pay the wife's attorney fees, awarded the wife her separately owned property, and awarded the Cascade residence to the husband.

The parties to this appeal were first married in 1955. Two children resulted from this marriage. During this marriage, the parties purchased a house and lot situated in Cascade, Montana, as joint owners. On March 25, 1971, the first marriage was terminated by a decree of divorce. On or about March 1, 1971, the parties entered into a property settlement agreement. Pursuant to the terms of the agreement, the wife relinquished:

> "III. That the Plaintiff relinquishes all
> right to title or equity in the land, resi-
> dence, improvements, drapes, beds, stove,
> washer, dryer & refrigerator situate in the
> County of Cascade, State of Montana, at
> Wellington Tracts, Lot One South, Cascade,
> Montana."

The husband in turn agreed:

> "II. That the Defendant shall pay to the
> Plaintiff the sum of not less than Two
> Hundred Dollars ($200.00) per month as
> alimony and for the care, support, and
> maintenance and education of said minor
> children in addition to any reasonable
> expenses incurred on behalf of said minor
> children for medical, hospital, dental
> care and optical." (Emphasis added.)

After the property settlement was executed, the wife with her two minor daughters took up residence in Michigan. The husband in the meantime failed to stay current with his $200 per month alimony/support obligation. On October 18, 1972, /an order for support under the Uniform Reciprocal Enforcement of Support

Act was settled. According to this order, it was stipulated that the husband was in arrears to the wife from June 15, 1971. The husband's payments were reduced to $50 per child plus all reasonable medical costs incurred by the minor children.

The parties married for the second time in June, 1975. After remarriage, the parties and their two children again resided in their former home at Cascade, Montana. The wife subsequently found employment. The income derived from this employment was expended on necessities for her and her family.

The second marriage was terminated in June, 1977. During trial for the second divorce, the attorney for defendant objected to any evidence concerning the obligations of the first divorce decree. The wife had attempted to amend the pleadings to include rescission of the 1971 property settlement, but this attempted amending was denied by the District Court. Following discussion on the admissibility of this evidence, the trial judge allowed the wife to proceed with the evidence, but reserved the right to rule on the admissibility after presentation of evidence. At the conclusion of the wife's presentation, the trial judge ruled the evidence concerning the obligations of the 1971 divorce decree not admissible.

The trial judge's findings, conclusions and decree were entered on June 6, 1977. From this judgment, the wife appeals.

The wife raises four issues for review:

1. Was there error when the wife was not granted an interest in the family residence?

2. Was the evidence concerning the obligations of the 1971 divorce decree admissible?

3. Was the child support award proper in light of the financial resources of each party?

4. Was the sum of $500 a proper award for attorney fees?

The husband raises one issue on cross-appeal: Are the monetary obligations under a prior property agreement and divorce decree extinguished by the remarriage of the parties?

Issue 1. The wife contends she is entitled to an interest in the Cascade residence. The parties were married on two separate occasions for a period in excess of 17 years. During this time, the only valuable asset accumulated by the parties was the Cascade residence. From her interest in this residence, sufficient funds could be realized to independently support herself and remaining minor daughter.

This issue requires review of the District Court's action and a determination whether the District Court abused its discretion. To facilitate this review, standards set forth under Montana's version of the Uniform Marriage and Divorce Act (U.M.D.A.) are applicable. Section 48-321(1), R.C.M. 1947, vests discretion in the District Court to " * * * apportion between the parties the property and assets belonging to either or both * * *." The Court in Downs v. Downs, (1976), ____Mont.____, 551 P.2d 1025, 1026, 33 St.Rep. 576, held District Courts have the power to divide property on an equitable basis regardless of the fact that title to the property is vested in only one of the parties. Additionally, the Court in Cook v. Cook, (1972), 159 Mont. 98, 104, 495 P.2d 591, established the principal that in equitably dividing the property, " * * * each case must be looked at by the trial court individually with an eye to its unique circumstances." Recently in Johnsrud v. Johnsrud, (1977), ____Mont. ____, 572 P.2d 902, 34 St.Rep. 1417, this Court clearly set forth at pp. 1421, 1422 the duty of the District Court in equitably distributing the property on dissolution of the marriage:

> " * * * it is the first duty of the District
> Court to equitably distribute the marital
> property. * * *"

" * * *

"The distribution or division of property
acquired during marriage by the team effort
of the marital partners, is, strictly speak-
ing not alimony. * * * Where property is
acquired during marraige by the joint
efforts of the parties, it should be divided
between the spouses according to what is just
and reasonable." 34 St.Rep. 1422, quoting
from Colley v. Colley (Ky. 1970), 460 S.W.2d
821, 826.

In Johnsrud this Court could not determine from the

findings and record that the case was properly tried and con-

sidered under the provisions of the U.M.D.A. The case was

remanded for a redetermination of the disposition of the parties'

marital estate. The District Court was additionally instructed

to make specific findings of fact on each element delineated

in section 48-321, R.C.M. 1947. We reach the same conclusion

in the case at hand.

First, the District Court's findings and conclusions

refer to the parties' 1971 property agreement. By virtue of

this agreement, the District Court recognized a contribution by

the husband to the first marriage. Although the District Court

recognized the husband's contribution according to this agree-

ment, no findings or record exists demonstrating a consideration

of the wife's contribution by virtue of this same agreement.

For this reason, we find the District Court abused its discre-

tion in not complying with section 48-321.

The agreement and facts of this case imply that the

wife had some property interest in the Cascade residence before

the 1971 divorce. At that time, the parties had been married

for 15 years and had lived in the Cascade residence for over

two years. According to the agreement, the wife was to receive

$200 per month as alimony and for the care, support, maintenance

and education of the two minor daughters. In consideration for

this $200 per month, the wife relinquished to the husband all

- 5 -

right to title or equity in the land and residence at Cascade. The husband additionally agreed to assume all debts, obligations and financial responsibilities incurred for or on behalf of the family.

Several pre-U.M.D.A. cases wherein the issue of alimony/ property settlement was raised add clarity to the relevance of the 1971 property agreement. In Washington v. Washington, (1973), 162 Mont. 349, 354, 512 P.2d 1300, the wife entered into a property settlement. As consideration for "alimony" payments of $750 per month for nine years, the wife gave up the right to any future support, and relinquished claims against property owned by the husband. The Court held that the agreement was fully supported by consideration from the wife and stated:

> "In the property settlement agreement, the payments to the wife for nine years were labeled as 'alimony', but, as is apparent from the agreement the payments were not in fact alimony per se, and the use of the term 'alimony' was only a label."

In the case at hand, the wife relinquished to the husband all right to title or equity in the land and residence at Cascade. The wife gave up her right to the Cascade residence for the right to receive payments, labeled as alimony, from the husband.

The alimony/property settlement distinction of Washington was reviewed by the Court in Movius v. Movius (1974), 163 Mont. 463, 468, 517 P.2d 884. There, the Court was faced with the question whether the alimony provision of the property settlement is integral and not severable from the rest of the agreement and as such not subject to subsequent modification. The wife sought an alimony award for her support. The divorce decree made such an award pursuant to the parties' agreement. The alimony payments to the wife terminated absolutely in the event of her remarriage. No provision was made concerning future payments

in the event of death of either the husband or wife. The alimony payments in <u>Movius</u> were clearly alimony and not payments in settlement of property rights.

The principles and rationale found in <u>Washington</u> were reaffirmed, though an opposite conclusion was reached due to the facts of <u>Movius</u>. In <u>Movius</u>, the wife assumed no liability for any pre-existing indebtedness. The wife also did not give up anything in the way of support and maintenance in consideration of receiving a more favorable division of property acquired during the marriage.

The case at hand is distinguishable from <u>Movius</u>. Here, the wife gave up her right to the property as consideration for the payments.

The distinction between alimony and property settlement was further clarified by the Court in Jones v. Flasted, (1976), 169 Mont. 60, 544 P.2d 1231. There, the Court reviewed whether the agreement between the parties passed permanent property rights to the ex-wife or gave the ex-wife only alimony rights terminating upon her death. The Court held the agreement did not transfer property rights. It was simply a contract to provide support for the ex-wife for 20 years if she should live that long. In reaching its decision, the Court stated at pp. 65-66.

> "There is a distinction between a property settlement on the one hand, and a contract to pay stated sums periodically in lieu of alimony on the other hand. This Court stated in Stefonick v. Stefonick, 118 Mont. 486, 501, 167 P.2d 848, 855:

> "'It is well settled that in this jurisdiction alimony is in no way a property settlement, but is the provision made for the support of the wife. * * *'

> " * * *

> "On the other hand, a property settlement settles property rights and may or may not mention the additional item of alimony. In 24 Am.Jur.2d, Divorce and Separation, §883, p. 1003, it is stated:

"' * * * Commonly, such a settlement (1)
determines the rights of the parties in
jointly owned property and states the dis-
position to be made of it; (2) settles all
claims of each spouse in the property of the
other and claims of each spouse to title to
property held in the name of the other; (3)
mutually releases all past and present claims
except as established by the agreement; (4)
waives and releases all future rights as
spouse in the property of each other; (5)
surrenders the rights of each on the death
of the other, including rights of inheritance,
homestead, dower, and the right to administer
the estate of the other and to have exemptions
and allowances from the estate; and (6) agrees
that each will execute all documents necessary
or desirable to carry out the purposes of the
agreement.'"

Here, the elements commonly found in a property settlement are
present.

Finally, in Englund v. Englund, (1976), 169 Mont. 418,
421, 547 P.2d 841, this Court held it was obvious that the
monthly payments to the wife were intended to be part of the
property settlement and became mistakenly labeled as alimony.
In that case, the wife had worked for most of the marital years
in the business office of the husband's plumbing operation and
helped in the accumulation of considerable property.  Following
divorce, the court ordered a property division consisting of
four installment lump sum payments of $2,500 each over a two
year period by the husband, with corresponding real property
conveyances from the wife.  In addition, the court ordered the
husband to pay $400 per month alimony.  On appeal, these monthly
payments were found not to be alimony, but instead part of the
property settlement.

In the present case, the 1971 property agreement mistaken-
ly labeled the $200 per month payments as "alimony" and child
support.  The District Court in 1977 should have interpreted the
$200 per month payments as incorporating a property settlement and
child support.  Thus, in 1971, the wife received a property

- 8 -

settlement from the assets of the marital estate. This property settlement produced for the wife a vested right in the $200 per month payment. Resultantly, in 1975 the wife entered the second marriage and contributed her vested property interest to the marital relationship.

Upon dissolution of the parties' second marriage, the District Court was required to consider the contributions of both parties and reach an equitable property distribution. As can be seen, the wife brought to the second marriage her vested interest from the 1971 property agreement. This contribution merited consideration. Since this Court cannot determine from the findings and record that the District Court properly tried and considered the contributions under the provisions of the U.M.D.A., we remand for a redetermination of the disposition of the parties' marital estate. Additionally, the District Court is instructed to make specific findings of fact on each element delineated in section 48-321, R.C.M. 1947.

Secondly, this Court is also unable to determine if the District Court considered the wife's contribution to the marital estate during the life of the second marriage. Cases decided following the enactment of the U.M.D.A. in Montana state that as a housewife, the wife acquired a vested interest in the property accumulated by the parties during the marriage. Johnsrud v. Johnsrud, supra; Biegalke v. Biegalke, (1977), ____Mont.____, 564 P.2d 987, 34 St.Rep. 401; Eschenburg v. Eschenburg, (1976), ____Mont.____, 557 P.2d 1014, 33 St.Rep. 1198; Downs v. Downs, supra. The wife in the present case lived in the family residence from 1975 to 1977. During this time the wife's contributions as a housewife and mother to the parties' two daughters though "differed in kind, they were of equal weight to the financial contributions of defendant [the husband]." Eschenburg, supra at 1016.

- 9 -

Issue 2. Given this Court's resolution of Issue 1, a discussion of Issue 2 deems the evidence admissible.

Issue 3. Evidence was presented by both parties as to the financial resources of each party. The record reveals that the testimony presented by the husband and wife conflicted as to the total expendible income of each party. The record also reveals that both parties had the opportunity to cross-examine and rebut any or all offered testimony. The District Court is in the best position to judge the weight and credibility of the witnesses, especially where there is a conflict of testimony. Easton v. Easton, (1977), ____Mont.____, 574 P.2d 989, 35 St. Rep. 123, 127. The wife had the burden to overcome the presumption of correctness of the District Court's decision. Unless there is a clear preponderance of evidence against the findings of the District Court, this Court will not reverse. Crncevich v. Georgetown Recreation Corp., (1975), 168 Mont. 113, 120, 541 P.2d 56. The wife failed to produce a preponderance of evidence to support this issue.

Issue 4. The fourth issue raised on appeal concerns the District Court's award of attorney fees. During trial, the attorney for the wife presented evidence showing he had spent 34-1/2 hours to date, in the prosecution of the divorce action and that his billing rate was $30 per hour. The attorney's exhibit containing time slips kept on the case was admitted into the record. Additionally, counsel for the husband stipulated that the attorney for the wife spent 34-1/2 hours on the case and that $30 was a reasonable rate if, in this case, it was appropriate that an attorney fee be awarded.

The District Court granted attorney fees in the amount of $500. Impliedly, the District Court ruled attorney fees were appropriate in this case. Section 48-327, R.C.M. 1947, states the court may order a party to pay a reasonable amount for attorney fees.

In the present case, the District Court accepted a stipulation that 34-1/2 hours had been spent in prosecuting the divorce action and that $30 per hour was a reasonable rate if attorney fees were appropriate. No evidence exists contrary to the stipulation as to a reasonable rate. Since the District Court ruled attorney fees were appropriate in this case, this Court orders the fees to be calculated according to the reasonable rate agreed upon by the attorneys.

The husband's cross-appeal raises the common-law theory that an indebtedness between a husband and wife is extinguished by the marriage. After a review of the husband's cited authority, this Court finds the majority view, rejecting the common-law approach, more persuasive.

While the husband cited 41 Am Jur 2d, Husband & Wife, §21, p. 34, for support, this Court notes §22, entitled "Married Women's Act", which provides:

> "The cases are not in accord on the effect of Married Women's Acts on the common-law rule that marriage extinguishes antenuptial obligations, not in contemplation of marriage, between the spouses. One view is that, under such acts, securing to a wife her separate estate, marriage does not extinguish such antenuptial debts, and does not extinguish contracts between them, at least not those relating to property, though it does terminate contracts for such services of the wife as the marriage obligates her to perform. * * *"

As additional support for the husband's proposition 45 ALR2d, Marriage of Debtor & Creditor, p. 718 was cited. Again a review of this authority discloses the majority view differs. Reference is made to §3, p. 724, which provides:

> "Under the married women's acts of a number of states, the common-law theory as to the unity of the spouses has been abrogated, with the result that marriage between the parties to a contractual debt no longer extinguishes the obligation."

The preceding authority discloses that the states of Arkansas, California, Illinois, Maine, Maryland, Massachusetts,

Minnesota, New York, Ohio and Vermont recognize the majority view that the Married Women's Acts have abrogated the rule that contractual obligations are extinguished by marriage. Florida has also adopted the view that debts survive the marriage. Pinkas v. Fiveash (Fla.App. 1961), 126 So.2d 910.

Montana's "Married Women's Act" commences at section 36-101, R.C.M. 1947. In State Farm Mutual v. Leary, (1975), 168 Mont. 482, 486, 544 P.2d 444, this Court, in quoting from Dutton v. Hightower and Lubrecht Construction Co., 214 F.Supp. 298, 300, stated:

> "' * * * [these sections] are procedural and create no new rights, but only remove the common law disability of married women to enforce their rights otherwise created and existing.'"

While State Farm Mutual involved the question of inter-family tort immunity doctrine as applied in Montana the abrogation of the common-law disability was clear. Montana, consequently, adheres to the majority view and rejects the husband's contention.

For the reasons cited, this case is remanded to the District Court for redetermination of the property distribution and attorney fees.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices