No. 81-557

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

LYNN G. SHULTZ,

Plaintiff and Appellant,

vs.

BERTON N. SHULTZ,

Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District
In and for the County of **Missoula**
Honorable John S. Henson, Judge presiding.

Counsel of Record:

For Appellant:

Milodragovich, Dale & Dye, Missoula, Montana
M. J. Milodragovich, Argued

For Respondent:

Datsopoulos, MacDonald & Lind, Missoula, Montana
Milton Datsopoulos, Argued

---

Submitted: March 4, 1983

Decided: July 27, 1983

Filed: JUL 27 1983

*Ethel M. Harrison*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of The Court.

This is an appeal from a Fourth Judicial District Court judgment terminating respondent's maintenance and insurance obligations under a marital and property settlement agreement, which was incorporated by reference into the 1973 dissolution decree. The issue is whether the District Court erred as a matter of law in modifying maintenance and insurance terms under the agreement and decree. We affirm the judgment of the district court in part and remand for further proceedings.

Appellant contends that the district court lacked the power to modify the maintenance and insurance terms because they were an integral part of an agreement negotiated by the parties' counsel and signed by the parties. It is appellant's position that such terms are not modifiable under section 40-4-208(2)(b), MCA, but can be altered only by consent of the parties, pursuant to subsection (3)(a) of the same statute. As support for this position, appellant relies on a line of cases following Washington v. Washington (1973), 162 Mont. 349, 512 P.2d 1300.

In Washington, this Court held that alimony payments were not subject to modification because they constituted an integral part of an agreement fully supported by consideration. Labels such as "alimony" or "maintenance" were found to be inconclusive indicators of the parties' intent under a marital and property settlement agreement. Factors which proved to be determinative included the recitation in the agreement that the wife had given up rights to future support, relinquished her interests in the husband's separate property, and agreed to be responsible for all her future obligations and a portion of her husband's existing obligations in return for monthly payments of

2

$750.00 until her death, irrespective of remarriage. We concluded in Washington that the support provision could not be severed from the agreement and modified without destroying the parties' contract.

Shortly thereafter, this Court had another opportunity to review a marital and property settlement agreement in light of a maintenance modification petition. In Movius v. Movius (1974), 163 Mont. 463, 517 P.2d 884, we held that modification of maintenance was permissible because the maintenance and property division provisions were not interrelated. Unlike Washington, the agreement in Movius provided that the wife's maintenance payments were automatically terminated upon her marriage and that the wife's receipt of maintenance was not conditioned upon her relinquishment of a more favorable property division or an assumption of pre-existing indebtedness. We concluded that absent mutual interdependence of provisions pertaining to alimony and property division, a maintenance award is subject to modification by a court on a proper showing of changed circumstances.

The Shultz property settlement agreement was executed on August 6, 1973 and was incorporated into the court's dissolution decree that same date. The Uniform Marriage and Divorce Act (UMDA) was enacted in 1975. Both Washington and Movius were decided before Montana adopted the UMDA. Unlike Washington and Movius, the Shultz case placed the district court in the peculiar situation of interpreting a 1973 agreement under uniform law enacted in 1975. For this reason, a comparison of the current and former divorce law pertaining to maintenance may be helpful.

Under both the old and new law, parties can agree to a support provision in their separation agreement. In pre-UMDA

3

cases where the parties did not so agree, the court could award support only if the divorce was granted "for an offense of the husband." Section 21-139, R.C.M. 1947. This condition having been met, the court had discretion to award "such suitable allowance to the wife for her support during her life or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively." Section 21-139, R.C.M. 1947. Absent agreement of the parties, an award for support was thus dependent upon the court's determination of fault and what was just under the circumstances. The court had discretion to withhold allowance of support if the wife had a "separate estate sufficient to give her proper support." Section 21-141, R.C.M. 1947. The court's discretion was not limited by any statutory definition of proper support.

The standard for a court decree of maintenance under the UMDA is slightly different. The parties may still agree upon a support provision in their separation agreement. However, absent such provision, the court may order support only if the spouse seeking maintenance "(a) lacks sufficient property to provide for his reasonable needs; and (b) is unable to support himself through appropriate employment . . .". Section 40-4-203(1), MCA. Whereas support under the old law was determined on the basis of fault and what the court deemed just and proper, support under the UMDA is dependent upon a showing of need.

The standard for modifying maintenance awards also differs. Under UMDA, the court may modify its support decree only "(i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable; or (ii) upon written consent of the parties." Section 40-4-208(2)(b), MCA. The unconscionability test

4

presents a stricter standard for modification than the broad discretion formerly afforded district courts.

Former law gave the trial court power to modify its orders "from time to time," but specified that support must terminate upon the wife's remarriage. Section 21-139, R.C.M. 1947. Unless otherwise expressly agreed by the parties, support terminates under present law upon the death of either party or the remarriage of the party receiving maintenance. Section 40-4-208(4), MCA. The parties can preclude or limit modification of maintenance terms set forth in the decree if their separation agreement so provides. Section 40-4-201(6), MCA. No such option to extend support payments past remarriage existed under former law. Thus, a pre-1975 provision for "support" after remarriage was stronger evidence that the parties intended to create a contractual obligation, than such a provision would be under post-UMDA law. In both instances provision for "maintenance" after remarriage is a factor in determining whether the parties intended to create a modifiable support provision or a non-modifiable contractual obligation.

Provisions must be interpreted in historical perspective. In Washington, a pre-UMDA case, monthly payments were to continue irrespective of remarriage. In Movius, another pre-UMDA case, payments were automatically terminated upon the wife's remarriage. The 1973 Shultz agreement did not specify when the monthly payments would terminate. Neither the decree nor the separation agreement precluded or limited the court's power to modify the "support" provision.

The marital and property settlement agreement executed by the Shultzes upon termination of their eighteen year marriage contained thirteen separate provisions regarding

5

child custody, tax exemptions, special education expenses, existing indebtedness, moving costs, attorneys' fees, property distribution, support for the children and for appellant, medical and hospital care, and life insurance. By the terms of the latter three provisions, respondent agreed (1) to pay to appellant "the sum of $450.00 per month as and for alimony for her care, support and maintenance," such amount to be increased by ten percent on the fifth anniversary of the agreement; (2) to provide sufficient medical and hospital insurance coverage for appellant until she remarried or until further court order; and (3) to provide life insurance with appellant named as owner and beneficiary.

It is not evident from the face of the agreement that the maintenance and medical insurance provisions were dependent upon or related to the property division or other sections of the agreement. The agreement specifies that the monthly payments were to provide for appellant's "care, support and maintenance." The parties recognized the court's power to retain jurisdiction and to modify the medical insurance term. The medical and hospital insurance provision specifically refers to continuation of benefits until appellant's remarriage or "further order of the Court."

The life insurance provision differs from the medical and hospital insurance provision in two respects. No contingency for termination or modification by the court is specified in the life insurance provision. Secondly, the wife was to be named as the owner as well as the beneficiary of the life insurance policy.

The fact that Mrs. Shultz was to be the policy owner is significant. Pursuant to the 1973 dissolution decree, she was to enjoy not only equitable rights to future proceeds as

6

the policy's named beneficiary, but also vested ownership rights in the policy. Had Mrs. Shultz been named as the policy owner as directed by the 1973 decree, it is likely that the company would have given her the option to maintain the policy by paying the premiums herself once the court modified the husband's obligation to pay premiums. During oral argument before this Court, counsel indicated that the policy was still in force and that the parties' children had been named beneficiaries. There is no other evidence in the record explaining what happened to the policy. When asked at the 1981 modification hearing whether the life insurance policy was still in effect and whether she had received any notifications or correspondence about it, Mrs. Shultz answered, "Never, no. I don't know anything about that." There is no other evidence pertaining to the life insurance policy. Evidently the district court's modification order not only relieved Mr. Shultz of his obligation to pay insurance premiums, it also divested Mrs. Shultz of her property rights in the policy.

Because of (1) the lack of evidence regarding management of the policy, (2) the fact that no purpose for the life insurance provision was stated in the 1973 separation agreement, (3) the absence of a finding of fact stating that purpose, and (4) the absence of a conclusion of law that the life insurance provision was severable from the property settlement contract, we hold that the husband's obligation to maintain a life insurance policy, naming his wife as owner and beneficiary, was improperly terminated.

We reverse as to that part of the district court's judgment and remand for such further proceedings as are necessary to determine the ownership and status of the policy, the extent to which the life insurance provision is

7

severable from the settlement agreement, and a determination consistent with this decision.

Regarding the maintenance and medical insurance provisions, the undisputed testimony at the hearing was that appellant was unemployed in 1973 and unable to support herself. Though she had a teaching degree, she lacked current certification and was, therefore, unable to seek employment in her field. Both parties stated that it was their understanding that the maintenance provision was intended to address appellant's basic living expenses.

Since the dissolution, appellant has received her teaching certification and has been employed in the Minnesota school system since 1976. As a teacher, appellant is provided with medical and dental insurance, although the coverage arguably is not as extensive as the policies maintained by respondent. Appellant also has held a job in private business. During the four years preceding the modification hearing, the combined total of her adjusted gross income, excluding maintenance payments, increased from $17,000 to $30,000.

While appellant testified that she accepted maintenance in lieu of pursuing any interests she could assert to respondent's business properties, respondent testified that the maintenance and property division provisions were not reciprocal.

We find substantial credible evidence in the record to support the district court's conclusion that the maintenance and medical insurance provisions are not integral to the parties' property settlement agreement and are, therefore, subject to modification upon a proper showing. The treatment by the district court of the new modification statute,

8

section 40-4-208, MCA, in its findings of fact, conclusions of law and order was excellent.

We affirm and ratify the severability principles of <u>Washington</u>, but we distinguish the terms of this agreement. Absent a clear and undisputed interrelationship between property distribution and "maintenance" provisions, modification is permissible upon a proper showing of changed circumstances and unconscionability.

We remand for further proceedings with regard to the life insurance policy and with that exception affirm the judgment of the lower court.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9