No. 14612

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

VOGA HOPPER,

        Plaintiff and Respondent,

  -vs-

EDWIN S. HOPPER,

        Defendant and Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Hoyt and Lewis, Great Falls, Montana

    For Respondent:

        Lyman H. Bennett, III, Bozeman, Montana

---

Submitted on briefs: July 5, 1979

Decided: SEP 2 1979

Filed: SEP 2 1979

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a final judgment of the District Court of the Eighteenth Judicial District, dated September 19, 1978. The District Court upheld its previous denial of appellant Edwin Hopper's alternative motions to vacate and set aside a property settlement and support agreement incorporated in the July 19, 1976 decree dissolving the marriage of Edwin and Voga Hopper. This Court ordered the matter submitted on the briefs and decides the case without oral argument.

The parties to this appeal were married in the State of Idaho in 1969. In the fall of 1975 the parties, residing in Bozeman, Montana, decided to obtain a dissolution of the marriage and orally agreed between themselves to a division of their property. Out of total assets of a value of approximately $200,000, virtually all of which had been contributed to the marriage by Edwin, Voga was to receive $50,000 cash plus an automobile and certain furnishings from the house. At the time Edwin had been employed for some 14 years as the exclusive sales representative for Tony Lama Boot Company for a territory encompassing several western states, a job which required extensive traveling. Shortly after Christmas, Edwin left Bozeman in connection with his business, and Voga, who was not employed outside the family home, consulted an attorney regarding the dissolution. Edwin testified that after this consultation, Voga increased her settlement demands to $85,000 cash plus the other property. Subsequently, Edwin and Voga together met with her attorney at which time the parties were advised that if they could agree upon a property settlement and an uncontested dissolu-

tion, they would save on expenses for attorney fees. It was decided that her attorney would represent both parties in the dissolution proceedings.

Edwin and Voga thereafter negotiated the terms of a property agreement and consulted with Edwin's financial advisor, Mr. Terry Lynn, regarding the tax consequences of their proposed settlement. Their attorney drafted a written property settlement and support agreement to reflect the agreement reached by the parties. The agreement was reviewed and slightly modified by Terry Lynn and then returned to the attorney who prepared the final draft. Edwin signed this final draft without reading it.

A petition for dissolution of marriage was filed by Voga in the District Court of the Eighteenth Judicial District on April 9, 1976, and a summons served on Edwin April 16, 1976. Edwin failed to appear at trial, and his default was entered by the District Court in a July 19, 1976, decree granting the dissolution and incorporating the terms of the property settlement and support agreement. The District Court made the following finding of fact:

"IX. That the parties to this action have reached a property settlement and support agreement and filed the same to be incorporated in this Decree, and the same is not unconscionable."

Under the terms of this property settlement and support agreement, Voga was to receive various assets of the marriage. Furthermore, Edwin was obligated to pay her the sum of $64,632 amortized over a period of 121 months in monthly installments of $850, with interest at 10 percent annually. He was also required to provide security for the payment of this obligation.

The District Court awarded the attorney $2500 as reasonable attorney fees and made a further finding of fact that:

"IV. The plaintiff is unemployed and is not trained for any employment other than the keeping of the records of the parties with respect to property of the parties . . ."

Somewhat at odds with this finding is the fact that Voga began work as a receptionist in a dentist's office at a salary of $450 per month the day following the date of the decree, a position she acknowledged she had obtained a short time prior to the dissolution of marriage.

Edwin first obtained separate counsel in November 1976 after the law firm that represented the parties in their dissolution attempted to execute on his property to collect attorney fees awarded in the decree. This dispute was settled out of court. Edwin regularly made the designated monthly payments to his former spouse and nothing further was done by either party in connection with the decree until September 1, 1977, when Voga filed an affidavit charging Edwin with contempt of court for failure to provide security for payment of the sum required to be paid to her under the property settlement agreement and decree. An order to show cause why he should not be held in contempt was issued by the Honorable W. W. Lessley on September 6, 1977. The Honorable Jack D. Shanstrom assumed jurisdiction on September 13, 1977, pursuant to an order granting Edwin's motion for disqualification. On November 7, 1977, Edwin filed an answer to the order to show cause and a motion for relief from the July 19, 1976 decree, together with an affidavit alleging that the terms of the property settlement and support agreement incorporated into the decree were unconscionable.

Following several continuances, a hearing was held on the order to show cause on December 9, 1977. During the

examination of Voga Hopper as an adverse witness, counsel for appellant initiated an inquiry touching upon elements of fraud allegedly committed upon the District Court at the time of the dissolution proceeding. This line of questioning was objected to by counsel for Voga on the grounds that no specific allegations of fraud had been previously alleged in any of the pleadings. Following oral argument by counsel, the District Court continued the hearing allowing Edwin to file additional pleadings setting forth specific allegations of fraud.

On April 12, 1978, Edwin, appellant herein, filed alternative motions pursuant to Rule 60(b), M.R.Civ.P. These motions requested the District Court to set aside that portion of the decree of dissolution relating to the property settlement and support agreement on grounds of fraud on the court, fraud in the inducement, and change of circumstances rendering the provisions unconscionable. Respondent's attorney then filed a motion asking the District Court to overrule appellant's motions for the reason that appellant's motions were not filed within 60 days after judgment as required by Rule 60(b), M.R.Civ.P., and for the further reason that no hearing was held on appellant's motions within ten days after the filing of the alternative motions, as is required by Rule 60(c) and Rule 59(d), M.R.Civ.P. Respondent's motion also requested a determination of the issues before the court.

The District Court issued an order on July 15, 1978, denying appellant's alternative motions. On August 4, 1978, appellant's attorney filed a motion, supported by affidavit, to vacate the order or judgment as there had been no hearing on the matter. The motion to vacate was then set for a

hearing on the merits and the hearing was held on August 31, 1978. At the commencement of this hearing, counsel for respondent contended that the issue of fraud was not properly before the District Court because the court lacked jurisdiction to hear the issue by virtue of Rule 60(b), M.R.Civ.P. The District Court permitted the testimony, as witnesses had been brought in from outside the area, and counsel for respondent participated in the hearing, preserving his jurisdictional challenge. Thereafter, on September 19, 1978, the District Court issued findings of fact and conclusions of law as proposed by counsel for respondent. Edwin Hopper appeals from these findings of fact and conclusions of law upholding the denial of his alternative motions to vacate the property settlement provisions of the decree of dissolution.

The issues presented may be summarized as follows:

1. Is paragraph II of the "property settlement and support agreement" a provision for the disposition of property or a provision for the payment of maintenance and support?

2. Did the District Court have jurisdiction to consider whether fraud had been committed upon the court?

3. Was the District Court's conclusion that no fraud had been committed upon the court supported by substantial evidence and the law?

4. Did the District Court have jurisdiction to consider whether fraud had been committed upon the appellant?

5. Did the District Court have jurisdiction to determine the conscionability of the provisions of the property settlement and support agreement?

The parties executed a written separation agreement which was incorporated into the decree of dissolution. Appellant contends that paragraph II of this instrument, set forth below, is a provision for the maintenance of his former spouse. Respondent argues that the provision contemplates a distribution of property. The agreement provides in pertinent part:

> "Additionally, in full and final settlement of the Second Party's obligation to support and maintain the First Party, the Second Party shall pay to the First Party or her designated beneficiary, the sum of Sixty Four Thousand Six Hundred Thirty Two and no/100 Dollars ($64,632.00) to be amortized over a period of one hundred twenty one (121) months, bearing interest at the rate of ten percent (10%) per annum and payable in monthly installments of Eight Hundred Fifty and no/100 Dollars ($850.00)." (Emphasis added.)

Appellant argues that the language employed by the parties governs, so that the payments, as designated, are to be made "in full and final settlement of the Second Party's obligation to support and maintain the First Party . . ." Furthermore, appellant contends that if this language is ambiguous, it should be construed most strongly against respondent as the drafting party.

While we agree that the language employed is ambiguous when read in light of the entire agreement, this language was drafted in final form by counsel for both parties. We agree with respondent that this language is in substance a provision for the distribution of property, notwithstanding the fact that it is couched in terms of support and maintenance. In a case decided prior to the enactment of the Uniform Marriage and Divorce Act in this state, the wife gave up the right to any future support, relinquished claims against property owned by the husband, and agreed to assume

some of the husband's liabilities as consideration for payments of $750 a month for nine years. We held that:

> "In the property settlement agreement, the payments to the wife for nine years were labeled as 'alimony', but, as is apparent from the agreement, the payments were not in fact alimony per se, and the use of the term 'alimony' was only a label." Washington v. Washington (1973), 162 Mont. 349, 354, 512 P.2d 1300.

See also, Movius v. Movius (1974), 163 Mont. 463, 517 P.2d 884.

Under the principles expressed in Washington, this Court will look past mere labels to the substance of the parties' agreement to determine whether particular provisions are maintenance payments to the former spouse or part of a property settlement. This rationale has been followed in a recent case decided under the Uniform Marriage and Divorce Act where the wife relinquished her right to the family residence in consideration for payments, labeled alimony, which were held to be part of the property settlement. In re Marriage of Reilly (1978), ___ Mont. ____, 577 P.2d 840, 35 St.Rep. 451.

The present case involves a provision for the payment of a lump sum, bearing interest, over a period of time, payable to the wife or to her designated beneficiary. The husband is required to provide security for payment of the principal and the sum of the unpaid balance becomes immediately due and payable upon his death or permanent disability. The agreement was drafted with the purpose of making the payments qualify as periodic payments for income tax purposes. The wife released all claims to any other property of the parties. Under the foregoing circumstances, it is clear that the paragraph in question is a provision for the distribution of property, rather than a provision for maintenance or support.

Turning to the second issue, we conclude that it was within the District Court's jurisdiction to determine whether fraud had been committed upon the court. The Uniform Marriage and Divorce Act, section 40-4-208(1) MCA, provides in pertinent part:

> "(b) . . . The provisions as to property disposition may not be revoked or modified by a court, except:
>
> ". . .
>
> "(ii) if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."

Rule 60(b), M.R.Civ.P., states that fraud is adequate grounds for granting relief from a judgment or order:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . The motion shall be made within a reasonable time, and for reasons (1),(2) and (3) when a defendant has been personally served . . . not more than 60 days after the judgment, order or proceeding was entered or taken . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding . . . or to set aside a judgment for fraud upon the court."

Respondent contends that the District Court lacked jurisdiction to rule on appellant's motion because he failed to comply with the 60-day time limitation set forth in Rule 60(b), M.R.Civ.P. The last sentence of Rule 60(b) forecloses any possibility that the time limitations for making a motion under the Rule have any application where fraud has been committed upon the court: "This rule does not limit the power of a court . . . to set aside a judgment for fraud upon the court."

The law in this state is settled:

"The power of the court to set aside a judgment on the basis of fraud upon the court is inherent and independent of statute, and the timeliness of proceedings to set aside a prior judgment so obtained is not subject to the six months time limitation in Rule 60(b), M.R.Civ.P., but must ultimately depend upon equitable principles and the sound discretion of the court."  In re Julia Ann Bad Yellow Hair (1973), 162 Mont. 107, 111, 509 P.2d 9, 12.

In Selway v. Burns (1967), 150 Mont. 1, 429 P.2d 640, 645, a case involving fraud committed upon the court, this Court stated:

"It was also argued that Mrs. Suthard's motion was not timely.  If this argument is based on the requirements of Rule 60(b), it cannot be accepted because the power invoked by the court in this matter does not depend on statute."

The only limitation that has been placed upon the exercise of this power is that the investigating court must observe the usual safeguards of the adversary process by granting notice to affected persons and by conducting a fair hearing on the existence of the fraud.  Selway v. Burns, supra, 429 P.2d at 644.  See also Pilati v. Pilati (1979), _____ Mont. ____, 592 P.2d 1374, 36 St.Rep. 619.  In light of the foregoing, we hold that the question of whether fraud was practiced upon the court was properly before the District Court.

We now turn to the question of whether the District Court holding was supported by substantial evidence and by the law.  The District Court reached a conclusion of law:

"IV.  That no fraud was committed on the Court during the plaintiff's presence before the Honorable W. W. Lessley on the 19th day of July, 1976, . . ."

This conclusion, coupled with the District Court's holding that appellant's alternative motions were properly denied for failure to comply with the time limitations of Rule 60(b), M.R.Civ.P., indicates that the District Court

properly considered applicable law and that its ruling is supported by the law. Because the District Court heard testimony on the issue and reached the conclusion of law quoted above, we must assume that the District Court considered this issue on the merits. Having concluded that no fraud had been committed upon the court, the District Court properly denied appellant's motions as being untimely under Rule 60(b), M.R.Civ.P.

Our standard for review has been stated as follows:

"When reviewing findings of fact and conclusions of law of a district court, sitting without a jury, this Court has repeatedly held such findings and conclusions will not be disturbed if supported by substantial evidence and by the law." Arrowhead, Inc. v. Safeway, Inc. (1978), ___ Mont. ___, 587 P.2d 411, 413, 35 St.Rep. 1830, 1832.

Appellant relies largely on the wife's failure to disclose that she had secured employment as establishing a fraud upon the court. Respondent began employment as a receptionist for a dentist at a salary of $450 per month on the day after the date of the decree of dissolution, having obtained that position some days prior to the dissolution. Yet the decree recited that she was "unemployed and not trained for any employment." Unfortunately, there is no transcript of the testimony taken at the dissolution proceedings of July 19, 1976, when this alleged fraud upon the court occurred.

This Court has held that "[f]raud upon the court . . . may consist of affirmatively misrepresenting facts to the court or of concealment of material facts by a person who is under a legal duty to make a full disclosure to the court." In re Julia Ann Bad Yellow Hair (1973), 162 Mont. 107, 111, 509 P.2d 9, 12, citing Selway v. Burns, supra.

-11-

The same issues were raised in a recent case where a former spouse petitioned to set aside a decree of dissolution and property settlement on grounds of fraud. Pilati v. Pilati (1979), ____ Mont. ____, 592 P.2d 1374, 36 St.Rep. 619. Pilati involved a situation where the husband failed to make a full and accurate disclosure of all the assets of the parties to either his spouse or to the court, with the result that the wife received a grossly inadequate property settlement under the terms of a settlement agreement incorporated in the decree. We held that his nondisclosure constituted an extrinsic fraud and a fraud upon the court so as to justify relief. There was no intentional concealment of material assets from the court in the present case as there was in Pilati. Likewise, this case does not involve a misrepresentation to the court preventing a fair submission of the controversy, as was the case in Selway, where the testator's executor represented to the District Court that the testator's daughter had consented to a stipulated judgment against her mother's estate when in fact the daughter had not so consented and was not even aware of the suit. Furthermore, the District Court had before it and incorporated into its decree a property settlement agreement that had been reached by the parties; it was not adjudicating a property settlement nor determining a maintenance award that would be affected by the future employment or employability of the parties.

The District Court could well have concluded that there was no affirmative misrepresentation or concealment by respondent or by counsel when he submitted the decree to the court and that any error as occurred when the court adopted the finding that Voga was unemployed and not trained for any

employment was inadvertent. Alternatively, the District Court may have concluded that the wife's employment status was not a material fact in view of the parties' property settlement agreement and that it did not substantially affect the merits of the case. That being so, we are unable to say that the District Court's holding was not supported by substantial evidence and the law.

There is no record of the dissolution proceedings of July 19, 1976, available to assist this Court in our review of the District Court's ruling. Furthermore, in balancing interests this Court has recognized a public interest in the finality of judgments. Although a different balance was struck under the differing facts of that case, the proper rule was stated in Selway:

> ". . . Any time limitations that may be involved in this case require that a balance be struck between the public interest in putting an end to litigation at some point and the public interest in keeping its judicial system free of corruption. For this reason the timeliness of the motion to vacate must ultimately depend upon equitable principles and placed within the sound discretion of the court . . ." 429 P.2d at 645.

Under all of the circumstances of the present case, we are constrained to uphold the ruling of the trial court.

The next issue is whether the District Court had jurisdiction to consider whether appellant had been defrauded into executing the property settlement agreement which was incorporated in the decree of dissolution.

Prior to the enactment of Rule 60(b), M.R.Civ.P., the now repealed predecessor statute, section 93-3905 R.C.M. 1947, provided that:

> ". . . [T]he court may . . . relieve a party or his legal representative from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; provided, that application therefor be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken."

Because this predecessor to Rule 60(b), M.R.Civ.P., did not provide for relieving a party from a judgment by fraud, this Court in several cases arising prior to enactment of Rule 60(b) relied on the inherent power of a court to grant relief from a judgment obtained by extrinsic fraud.

> "The power of a court of equity to grant relief
> from a judgment obtained by fraud is inherent;
> it does not depend upon statute." Bullard v.
> Zimmerman (1930), 88 Mont. 271, 277, 292 P. 730,
> 732.

The statutory time limitation in the former statute did not apply to fraud:

> ". . . a court of general jurisdiction has the
> right, entirely independent of statute, to grant
> relief against a judgment obtained by extrinsic
> fraud, and may grant that relief either on mo-
> tion in the original cause or upon a separate
> equity suit, and after the period proscribed by
> the statute . . ." Cure v. Southwick (1960),
> 137 Mont. 1, 349 P.2d 575, 579, citing Gillen
> v. Gillen (1945), 117 Mont. 496, 159 P.2d 511.
> (Emphasis added.)

This rule applied only to fraud which could be classified as "extrinsic fraud":

> "Not every fraud committed in the course of a
> judicial determination will furnish ground for
> such relief. The acts for which a judgment or
> decree may be set aside or annulled have refer-
> ence only to fraud which is extrinsic or colla-
> teral to the matter tried by the court, and not
> to fraud in the matter on which judgment was
> rendered . . . [Fraud] is extrinsic or collateral
> within the meaning of the rule, when the effect
> of it is to prevent the unsuccessful party from
> having a trial or from presenting his case fully."
> Bullard v. Zimmerman, 88 Mont. at 277, 292 P.
> at 732, citing Clark v. Clark (1922), 64 Mont.
> 386, 210 P. 93, 94.

Rule 60(b), M.R.Civ.P., unlike its predecessor section 93-3905, specifically enumerates fraud as a ground for relief from a judgment:

> "On motion and upon such terms as are just, the
> court may relieve a party or his legal represen-
> tative from a final judgment, order, or proceeding
> for the following reasons: . . . (3) fraud (whe-
> ther heretofore denominated intrinsic or extrinsic)
> . . ."

-14-

Moreover, Rule 60(b) establishes a time limitation within which the motion must be made:

> "The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) when a defendant has been personally served . . . not more than 60 days after the judgment, order or proceeding was entered or taken . . ."

This time limitation, however, does not apply to an independent action for relief from a judgment, as distinguished from a motion for such relief. The last sentence of Rule 60(b), M.R.Civ.P., states that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment. . ."

In a recent case decided under Rule 60(b), we followed the established rule that the courts of this state have inherent power to set aside a judgment for extrinsic fraud, independent of statute and statutory time limitations, where one of the parties brought an independent action for relief. Pilati v. Pilati (1979), _____ Mont. _____, 592 P.2d 1374, 36 St.Rep. 619. Appellant in the present case attempted to raise the issue of extrinsic fraud on motion after the 60-day time limitation of Rule 60(b) had expired, rather than by an independent action for relief from the judgment. He is barred from proceeding on motion under Rule 60(b), and the District Court properly denied his alternative motions in this regard.

The final issue in this case is whether or not the District Court had jurisdiction to determine the conscionability of the property settlement agreement where the court had earlier, in the decree of dissolution, found the agreement to be not unconscionable. The District Court held that a determination of conscionability was prevented by the doctrine of res judicata. We agree.

"The doctrine of res judicata states that a final judgment on the merits by a court of competent jurisdiction is conclusive as to causes of action or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." Meagher County Newlan Creek Water Dist. v. Walter (1976), 169 Mont. 358, 361, 547 P.2d 850, 852.

". . . [F]our criteria exist in Montana law which must be met before a plea of res judicata can be sustained. These criteria are: (1) the parties or their privies must be the same; (2) the subject matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject matter; and (4) the capacities of the persons must be the same in reference to the subject matter and to the issues before them." Smith v. County of Musselshell (1970), 155 Mont. 376, 378, 472 P.2d 878, 880.

All these criteria are satisfied in the present case.

In view of the foregoing, it is unnecessary for us to decide whether or not appellant's motions were also untimely for the reason that no hearing was held on the motions within ten days after filing, as is required by Rule 60(c) and Rule 59(d), M.R.Civ.P.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-16-