No. 80-268

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

WENDELL D. HADFORD,

Plaintiff and Appellant,

vs.

ELIZABETH M. HADFORD,

Defendant and Respondent.

Appeal from:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin.
                Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Landoe, Brown, Planalp, Kommers & Lineberger, Bozeman,
        Montana

    For Respondent:

        Morrow, Sedivy, Olson and Scully, Bozeman, Montana

Submitted on briefs: December 30, 1980

Decided: August 17, 1981

Filed: **AUG 17 1981**

*Thomas J. Kearney*

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Wendell D. Hadford (husband) appeals a 1980 judgment of the Gallatin County District Court setting aside a property settlement agreement and decree entered in 1974. The 1974 decree provided that the family home and laundromat in Bozeman be sold and the proceeds evenly divided. The 1980 decree ordered the husband to convey his one-half interest in the home and laundromat to his ex-wife, subject to the existing mortgages. The husband also appeals from that part of the order directing him to pay $1,754 for college tuition advanced for two of the children.

Although there are references in the trial court's memorandum to fraud on the court because the husband failed to disclose all his assets before the 1974 decree was entered, it appears that the trial court set the property settlement and decree aside on the ground that it was unconscionable. The husband argues that the 1974 property agreement and decree is res judicata on the question of unconscionability. He further argues that there is no evidence indicating fraud on the court. We reverse the trial court and hold that the court had no right to set aside the 1974 decree on the grounds of unconscionability; the failure of the wife to appeal from the court's decree, by which she could contest the conscionability of the property settlement and decree, has rendered this issue res judicata. We further hold that there is no basis in the record to hold that the husband committed a fraud on the court by not disclosing all his assets before the 1974 decree was signed. The record is barren of any failure to disclose assets.

-2-

On the child support and college tuition issues, the husband admits the arrearages, but argues that certain payments made to his wife or children should be allowed to offset these obligations. We affirm the trial court on both issues.

In 1974, the husband and wife negotiated a property settlement and child support agreement. Both had lawyers. After reaching this agreement, the wife and her attorney appeared in Gallatin County District Court to obtain the divorce and asked the court to approve the property settlement agreement. The property settlement was merged into the divorce decree.

The child support provision stated that the husband would pay child support of $200 per month for each child until they reached majority. It further provided that the husband would pay college tuition for all the children that were willing and able to go to college. It also stated that the husband could pay this tuition to the wife, so that she could use the money to pay the normal living expenses of the children who lived at home while continuing their college education.

The property distribution agreement stated that the property would be evenly divided. The dispute here centers on the Bozeman home which had an approximate equity of $15,000 in 1974, and the Bozeman laundromat, which had an equity of approximately $34,000 in 1974. The agreement stated that the equity in the home would be divided evenly between the husband and wife, but that the wife would be given credit for payments made on the home after the effective date of the property settlement agreement. The agreement also stated that the equity on the sale of the Bozeman laundromat

and the sale of certain lots in Great Falls, would be evenly divided when they were sold. Finally, the agreement stated that if the real property was not sold within twelve months, the matter would be submitted to the court having jurisdiction of the case.

In 1976, the husband sold the Great Falls lots and delivered one-half of the net proceeds to the wife. But neither the home nor the laundry was sold. The wife continued to live in the home with one or more of the children, and made the monthly mortgage payments. She also ran the Bozeman laundromat.

On December 10, 1979, the wife filed a petition to set aside the property settlement merged into the 1974 divorce and property distribution decree. She asked for sole ownership of the home and laundromat. She also asked the court to order that the husband pay delinquent child support and reimburse her for college tuition expenses she paid for the children.

The wife's grounds for setting aside the decree are vague, but unconscionability seems to be the central theme. With no supporting particulars, she alleged that in 1974 her mental state made her unable to comprehend the economics of maintaining a home and running a laundromat. She further alleged, without any supporting particulars, that the husband failed to make full and accurate disclosure of all assets and that his failure to do so amounted to fraud against the wife.

The wife produced no evidence that the husband failed to disclose all the assets before the trial court entered the 1974 default decree against the husband. Nor did she present evidence that the 1974 agreement, as alleged in her petition, was unconscionable. Her evidence was geared to showing that the expenses of maintaining the home and running

the laundromat, were more than what she anticipated when she agreed to the 1974 property settlement. She did testify, as did other witnesses in her behalf, that emotional problems caused by the breakup of the marriage affected her ability to think clearly when she signed the 1974 property settlement. She was, however, represented by counsel in negotiating the property settlement, and counsel was present when the divorce decree was signed and merged with the property settlement.

The findings of the trial court are vague and conclusory. It appears, however, that the trial court set the 1974 decree aside because it was unconscionable. The court made several conclusory findings for which there is no evidentiary support. The court found that the husband had not disclosed the property and income during the 1974 divorce proceeding. It was, however, the wife and her counsel who presented the proposed property settlement to the court. Further, the trial court did not state what property the husband had failed to disclose, and the record does not support a finding that the husband failed to disclose property. In finding that the wife did not have the "mental condition" to comprehend the 1974 property settlement, the court found this only as a general conclusion.

Based on these findings (actually, conclusions) the trial court jumped to a finding (actually, another conclusion) that the property settlement agreement was "unconscionable," and therefore that the husband must give up his one-half interest in the house and laundromat to the wife.

After the trial court's ruling, the husband moved the trial court to amend the findings and conclusions and to provide a memorandum of decision so that the husband would know the basis of the trial court's decision. Insofar as it applies here, the trial court merely amended the findings and conclusions to again make a bald conclusion that the

-5-

property settlement agreement and decree was "unconscionable." The court did, however, file a memorandum opinion, but it also fails to set out a basis on which the trial court can be upheld.

The memorandum simply repeats the allegations of the wife in her petition to set aside the 1974 decree, but it does not analyze whether the wife can prevail on any of these grounds. Except for the allegation of fraud (which was an allegation of fraud against the wife), the memorandum omits any discussion of these grounds. Without explanation, the trial court simply held that the husband committed a fraud on the court when the divorce was obtained in 1974. There is no discussion of the basis for this conclusion, and there is no evidence in the record to justify this conclusion.

Without expressly stating, counsel for the wife impliedly admits that unconscionability standing alone is insufficient to set aside a property settlement agreement merged with a divorce decree, but argues that the settlement here was properly set aside because of fraud against the wife and on the court. But nowhere in their brief do they explain how the husband perpetrated a fraud against the wife or on the court. The record fails to support a ruling that the husband is guilty of fraud.

We proceed next to the trial court's unsupported conclusion that the 1974 property settlement merged with the 1974 decree must be set aside because it is unconscionable. First, as we have already stated, the record does not support such a conclusion. Second, the issue of conscionability versus unconscionability was decided by operation of law when the 1974 property settlement was approved and merged with the decree. Under the Uniform Marriage and Divorce Act, section 40-4-201(2), MCA, it was the duty of the court to inquire into the conscionability of the property settlement

-6-

before it was approved, or it was the duty of the wife to ask the court to inquire into the conscionability of the decree before it was finally approved. But when neither the court nor the wife did this, this issue became final when the appeal time expired. The wife had no right six years later to attempt to relitigate this issue which the law requires to be decided before the entry of the decree if either the court or one of the parties questions the conscionability of the decree. Res judicata clearly bars this claim.

By section 48-341(3), R.C.M. 1947 (not codified in MCA), the Uniform Marriage and Divorce Act (UMDA) applies to all proceedings started after its effective date (January 1, 1976), for the modification of a judgment or order entered before the effective date of the Act.

Under section 40-4-201(2), MCA, the courts are bound by a property settlement agreement signed by both parties unless the court then finds the agreement to be unconscionable. Under this statute, the court can determine the question of conscionability on its own motion, or either of the parties can raise this issue before the agreement is merged into a decree and becomes final.

Here, the wife appeared before the District Court on May 1, 1974, with counsel, and presented the proposed divorce decree together with the signed property settlement agreement, and asked the court to grant the divorce decree, to approve the property settlement agreement, and to merge the agreement with the decree of divorce. Neither the husband nor his counsel appeared at this proceeding. (Of course, it was understood that they would not, and that the wife would obtain the default decree and have the property settlement agreement approved by the court.) If the trial court was in doubt concerning the fairness of the property settlement

agreement, it had a right to conduct whatever proceedings were necessary to determine the fairness of the agreement. If, after conducting the proceedings, it determined the agreement to be unconscionable, it had a right to set the agreement aside under section 40-4-201(2), or the wife herself had the right (under section 40-4-201(2)), to ask the court to take a second look at the agreement before it was approved and became a part of the decree.

Obviously the wife and her attorney thought the property settlement agreement was fair, for neither of them asked the trial court to look into its fairness. Nor did the trial court, on its own motion, decide to look into its fairness before signing the decree and merging the agreement with the decree. The wife and her attorney did nothing before the time to modify the decision expired (Rule 59(g), M.R.Civ.P.), and the wife and her attorney did nothing before the appeal time expired (Rule 5, M.R.App.Civ.P.) Rather, the wife waited six years after the entry of the decree before she went into court.

By section 40-4-201(2), MCA, district courts must abide by the terms of a property settlement agreement unless its terms are unconscionable. This statute has a dual purpose. First, it expresses a clear policy encouraging property settlement agreements. Obviously, a property settlement agreement would be useless if the courts were free to set them aside whenever the mood struck. Under the statute, the property settlement decree must be approved unless the District Court finds it to be unconscionable.

The second purpose has the goal of finality. A property settlement agreement would also be useless if the courts were free to set them aside at any time simply on the motion

and allegation of one of the parties that the property settlement agreement merged with the decree is unconscionable. That is why section 40-4-201(2) also provides that when the property settlement agreement is presented to the District Court for approval, the District Court can, on its own motion, determine its conscionability, or, one of the parties can raise the issue before the decree is entered and the agreement merged with the decree. Applied here, it was the duty of the District Court or the wife to raise the issue of unconscionability. It was not raised, and it is too late to do so now. The issue has been clearly barred by the doctrine of res judicata. The doctrine applies not only to issues which were raised and decided, but to issues which should have been raised and decided. Sherlock v. Greaves (1938), 106 Mont. 206, 76 P.2d 87; and Swaim v. ~~Pedeen~~ Redeen (1936), 101 Mont. 521, 55 P.2d 1.

Section 40-4-201(2) squarely places the issue of conscionability versus unconscionability before the court at the time the parties present the property settlement agreement to the court for its approval. Under the statute, the court on its own motion can go behind the agreement to determine this issue, or one of the parties can ask the court to do so. Since the District Court failed to inquire into this issue on its own motion, it was the wife's duty to ask him to do so. Having failed to do so, she is not now in a position six years later to request that the court do so.

We set out the four criteria for application of res judicata in Hopper v. Hopper (1979), ___ Mont. ____, 601 P.2d 29, 36 St.Rep. 1695, and held that the husband was barred by res judicata from seeking to set aside the property settlement merged with the decree. The husband argues here

-9-

that Hopper is inapplicable because when the decree was originally entered in Hopper, the trial court made a specific finding that the agreement was not unconscionable. Therefore, he contends that the issue was actually decided in Hopper, but was not decided here. Res judicata applies to issues that have been raised and decided, and to those which should have been raised and decided, and which are necessarily included in a final judgment. Sherlock and Swain, supra. This principle is particularly important where a statute expressly imposes a duty on either the trial court or one of the parties to raise the issue of conscionability versus unconscionability before the decree is signed. It was not done here and the wife is barred.

We next discuss the fraud issue, although we have stated that there is no basis in the evidence for concluding that the husband perpetrated a fraud on his wife or on the court. We also held in Hopper, supra, 601 P.2d 35-36, that before a final judgment can be reopened there must be a finding of extrinsic fraud. By this we meant such fraud as to "prevent the unsuccessful party from having a trial or from presenting his case fully." 601 P.2d at 36.

Although it was the wife and her counsel who urged the trial court to adopt the property settlement agreement and to sign the decree, in effect, it is the wife who now claims to be the unsuccessful party. This procedural context does not by itself foreclose her from later claiming extrinsic fraud, but the plain fact is that extrinsic fraud does not exist in this case. Nothing in the record shows that the husband prevented the wife from fully presenting her case when she obtained the default decree against the husband, and nothing in the record shows that she lacked knowledge of all the

-10-

marital assets. Further, nothing prevented the wife from then asking the court to go behind the face of the agreement to determine its conscionability. The trial court's bald conclusion that extrinsic fraud existed does not substitute for the evidence which must support this conclusion. That evidence is nonexistent.

We proceed next to the issues involving child support and college tuition for the children. On child support, the decree stated that the husband would pay $200 per month for each of the minor children until they reached majority. On college tuition, the decree provided that the husband would pay the children's tuition and that the tuition could be paid to the wife while the children were attending college but living at home.

In filing the petition to set aside the property settlement agreement, the wife also alleged that the husband was $1,800 behind in child support and that he owed $1,754 which the wife had advanced to the children for their college tuition. The husband admitted that he had not directly paid the child support and that the wife had paid the $1,754 tuition which was the husband's duty to pay. However, on each claim he alleged an offset because of other payments made to the wife or to the children.

He claims that the back child support obligation should be offset by the failure of the wife to return $1,399 of the 1977 income tax refund. He signed the check, sent it to the wife to sign, but she signed it and kept all of the proceeds. He also claims in his brief, without specifying the amount, that he continued to make child support payments while the children stayed with him, and that this must be allowed as an offset. Finally, he claims to have given $1,000 to his daughter on her eighteenth birthday, and this should be

-11-

allowed as an offset to past child support obligations.

He claims offsets ($4,270) in the payment of college tuition, for the following payments: He overpaid maintenance to his wife (apparently during the year following the divorce, when he had agreed to pay her $300 per month maintenance for the first year); he claims mortgage payments made on certain property in Great Falls; and finally, he claims his son retained the proceeds of the sale of snowmobiles with his approval, and this also should be allowed as an offset. Nowhere in his brief does he breakdown the claimed amounts under each claimed offset; nor does he cite us to the record where this information may be found.

As legal authority for offsets against both child support and college tuition, the husband relies on Haaby v. Haaby (1974), 165 Mont. 475, 529 P.2d 1387, which held that the cash monthly child support payments required by a divorce decree could be satisfied by house payments made by the obligated parent. There, we stated, "it is simply a matter of stripping away the form to get at the substance." In Haaby, however, the evidence was that the husband and wife agreed that the mortgage payments on the house could be made instead of child support. No such evidence exists in this case.

Further, in Williams v. Budke (1980), ___ Mont. ____, 606 P.2d 515, 37 St.Rep. 228, this Court held that the test is whether there is substantial compliance with the child support order. There was neither substantial compliance with the child support order nor with the college tuition agreement merged with the decree. In fact, there is not the slightest evidence that the claimed offsets were intended to offset either the payments for child support or the payments for college tuition.

-12-

Other factors also cause us to deny the offsets for child support. The $1,000 birthday present to the daughter on her eighteenth birthday was surely intended as a gift, and therefore cannot also be used to offset past support obligations. Presumably, the wife supported the daughter with her own earnings during the time that the husband was behind. The $1,000 given to the daughter cannot be said to offset the husband's obligation to pay the wife for the children's support.

Nor should the wife's retention of the husband's one-half of the income tax refund be permitted to offset the child support obligation. The question of who was entitled to the proceeds of the income tax return is purely a dispute between the husband and wife as to their property settlement, and it should not affect the separate child support obligation imposed on the husband.

The same analysis applies to the claimed offsets against college tuition payments for the children. If the husband overpaid maintenance to the wife, that is a problem between them which does not offset the husband's duty to pay college tuition. The same is true of the husband's mortgage payments on the lots in Great Falls. He admits that his son, with his permission, kept the proceeds from the sale of snowmobiles (which made up part of the marital estate). He did not then tell his wife or his son that these sale proceeds were to be used for college tuition, and the permission thus given does not offset the duty to pay college tuition. In the property settlement, the husband agreed to pay college tuition, but he is delinquent in that obligation. Therefore, he must pay.

The order of the District Court is reversed in part and affirmed in part. We remand this cause to the District Court for proceedings consistent with this opinion.

-13-

_____
                           Justice

We concur:

_____
Chief Justice

_____

_____
                           Justices

-14-

Mr. Justice John C. Sheehy dissenting in part:

I dissent to the portion of the majority opinion that reverses the District Court in its finding that the property settlement agreement was unconscionable as to the wife.

Nowhere in the majority opinion is section 40-4-208(3)(b), MCA mentioned, although it is the statute under which the wife is proceeding in order to have the property settlement agreement modified to speak the best interests of the wife.

That section provides:

"(3)  The provisions as to property disposition may not be revoked or modified by a court, except:

". . .

"(b) if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state."  (Emphasis added.)

The power of the District Court to modify a property settlement agreement which has been incorporated in a judgment (decree of dissolution) is not limited to what the court could have found at the time of the original adoption of the property settlement agreement under section 40-4-202, MCA.  The court may relieve a party under section 40-4-208(3)(b), MCA from a final judgment or order for mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, intrinsic and extrinsic fraud, misrepresentation, misconduct, and "any other reason justifying relief from the operation of the judgment."  Rule 60(b), M.R.Civ.P.  The court is not limited as to time, if the effect of the petition is to "set aside a judgment for fraud upon a court."  Rule 60(b), M.R.Civ.P.

The District Court here was completely within its power to determine whether the judgment was attackable.  The effect of the majority opinion here is that if a spouse does not raise the issue of unconscionability or fraud at the

-15-

time of the original decree of divorce, he or she is thereafter foreclosed from raising such an issue. Such a construction too narrowly constricts the statutes applicable and the power of the District Court. I particularly oppose the proposition that res judicata applies once the District Court has adopted a property settlement agreement, because application of res judicata has the effect of negating section 40-4-208(3), MCA.

The District Court found a fraud upon the court in the first instance, and also the inability of the wife to comprehend the provisions of the property settlement agreement at the time that she entered into the contract. I find no reasons in the record to set such findings or conclusions aside. I would therefore uphold the District Court's finding that the property settlement agreement was unconscionable.

_____
                    Justice