NO.   94-521

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE MARRIAGE OF

KATHY DARLENE BLAIR,

     Petitioner and Respondent,

  -v-

STEPHEN J. BLAIR,

     Respondent and Appellant.



APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Marcia Birkenbuel, Great Falls, Montana

     For Respondent:

        James D. Elshoff, Great Falls, Montana

                   Submitted on Briefs:   March 2, 1995

                          Decided: May 18, 1995

Filed:

_____
          Clerk

Justice Fred J. Weber delivered the Opinion of the Court

This is an appeal from a decision of the Eighth Judicial District Court, Cascade County, granting Kathy Darlene Blair's motion requesting she be awarded her percentage interest in Stephen J. Blair's military Special Separation Benefits. We affirm.

We restate the issues on appeal:

I. Did the District Court err when it found payments received by a member of the military under the Special Separation Benefits program an item of marital property or retirement benefits subject to division by the dissolution court?

II. Did the District Court lose jurisdiction to change the property settlement provisions of the Decree when it failed to rule on the motion within forty-five days from the time it was filed?

III. Was the District Court's decision barred by res judicata?

IV. Did the District Court err when it did not order Stephen Blair to reimburse Kathy Blair for attorney fees?

The parties were married in 1980, and their marriage was dissolved by the District Court in 1993. The parties agreed to and signed a marital property settlement which the court found not unconscionable. The court divided the marital estate as the parties suggested. Part of the division was that Kathy Blair (Kathy) would receive a share of Stephen Blair's (Stephen) future net disposable military retirement pay. Her share would be based on a percentage using the number of years they were married (twelve) and the actual number of years Stephen served on active

2

duty.  At that time, it was assumed Stephen would retire from the military after twenty years of active duty.

In 1994, Stephen was accepted into the Special Separation Benefits program (SSB) pursuant to 10 U.S.C. § 1174a. He voluntarily separated from his military service on October I, 1994, and agreed to serve in the Ready Reserve for a minimum of three years.  He received separation pay based on years of service and current base pay.  Stephen completed fifteen years of active service.

On March 24, 1994, Kathy filed a motion entitled Motion for an Order Modifying Decree as to Retirement Benefits.  On May 6, 1994, she filed a motion to divide the retirement benefits Stephen received from the SSB program.  The District Court held a hearing on the motions on May 6, 1994, and awarded Kathy a percentage interest of Stephen's separation pay.

Stephen appeals from the District Court's September 21, 1994 decision.

1.

Did the District Court err when it found payments received by a member of the military under the Special Separation Benefits program an item of marital property or retirement benefits subject to division by the dissolution court?

Stephen argues that military retirement and SSB are defined by two different statutes and are two distinct groups of military entitlement.  He then argues that 10 U.S.C. § 1408 specifically authorizes the division of military retirement pay as a marital

asset in a proceeding for dissolution, but 10 U.S.C. § 1174a does not contain any language authorizing the division of SSB pay in a dissolution proceeding.

Stephen refers to McCarty v. McCarty (1981), 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589, in which the U.S. Supreme Court emphasized that the decision as to the availability of retirement pay to a spouse is left to Congress alone. After the McCarty ruling, Congress enacted the Uniformed Services Former Spouses' Protection Act (Spouses' Protection Act), 10 U.S.C. § 1408. This act authorizes a dissolution court's division of "disposable retired or retainer pay."

Stephen argues that his separation pay is not an early retirement benefit. He states that he is no longer eligible for military retirement because he terminated his active duty status prior to the number of years of service required for retirement, and that he received special separation pay in return for serving in the military's Ready Reserve for at least three years following his separation from active duty.

Stephen also refers to Mansell v. Mansell (1989), 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675, in which the U.S. Supreme Court ruled that state courts could not treat the portion of **military** retirement waived in order to receive Veteran's Administration disability benefits as marital property devisable under the Spouses' Protection Act. Stephen concludes, under McCarty and Mansell, state courts do not have authority to divide SSB pay as a marital asset unless Congress specifically authorizes

4

such a division.

Kathy argues that the benefits provided under 10 U.S.C. § 1174a are clearly for purposes of retirement. She states that the SSB program is known as the "Early Out Program." She points out that SSB benefits are awarded based on years served of active duty the same as other retirement benefits.

Kathy refers to Elzie v. Aspen (D.D.C.1993), 841 F.Supp. 439, 440, which found that SSB benefits provide incentive payments as inducements "to elect early retirement." In addition, Kathy includes a copy of a brochure disseminated by the Department of Defense describing the voluntary separation incentives and what they mean to eligible military members. On page six of the brochure, in a question/answer format, it states:

What happens to VSI or SSB if I become retirement-eligible?

Essentially, you pay it back from your retirement pay. Kathy stresses the point that if a member voluntarily separates from active duty and then re-enlists, his or her retirement pay, not the current wages, would be tapped for reimbursement. Kathy then refers to the District Court in Cascade County which has twice ruled that SSB benefits are marital property and subject to division upon receipt. In re the Marriage of Daws, BDR 91-626, decided on July 1, 1992; and, In re the Marriage of Plunkett, BDR 90-520, decided on September 8, 1992.

The District Court found that Stephen and Kathy, prior to dissolution, negotiated the terms and freely entered into a Property **Settlement** Agreement stating "[Kathy] was awarded a share

5

of [Stephen's] future net disposable military retirement pay, to be calculated based upon [Stephen's] actual number of years of service at the time of retirement."

The District Court then likened SSB payments to military pensions because they are both based on longevity of service. The court stated that military pensions have long been declared in Montana to be a marital asset divisible upon dissolution; therefore, SSB payments are also divisible. Stephen and Kathy were married twelve of the fifteen years of his active service. Since a portion of Stephen's separation benefits accrued during his marriage to Kathy, the court concluded that portion is divisible by the court upon dissolution.

Our standard of review of the District Court's conclusions of law is to determine if the District Court's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-475, 803 P.2d 601, 603-604.

Stephen relies on McCarty and Mansell for the principle that federal law preempts state law in the treatment of military retirement. In McCarty, the U.S. Supreme Court held that the husband's military retirement pay was not subject to California's community property laws; and, therefore, could not be attached to satisfy a property settlement incident to the dissolution of marriage absent congressional authority to do so. McCarty, 453 U.S. at 228-232, 101 S.Ct. at 2739-2741, 69 L.Ed.2d at 603-605. However, in response to McCarty, Congress enacted Title 10 U.S.C. § 1408, known as the Former Spouses' Protection Act. This act

6

provided the congressional authority the Supreme Court found absent.

Further, the Court's reasoning, in <u>Mansell</u>, is contrary to Stephen's analysis. There, the Court reiterated its prior holding that state law preempts federal law in all domestic relations unless Congress positively enacts it. <u>Mansell</u>, 490 U.S. at 587, 109 S.Ct. at 2028, 104 L.Ed.2d at 684. Congress expressly excluded VA disability benefits received in lieu of military retirement from division by the state dissolution court. 10 U.S.C. § 1048(a)(4)(B). No such expression was enacted for military retirement waived to receive special separation benefits under 10 U.S.C. § 1174(a). The holding in <u>Mansell</u> clearly sets forth limitations on the holding in <u>McCarty</u> as applied to this case.

Further, we note the Department of Defense's statement concerning a dissolution court's ability to divide SSB payments. Page six of the Department's brochure states:

> How will state courts treat VSI/SSB in a divorce settlement?
>
> The treatment of VSI or SSB is not dictated by Federal law. It will be up to the state courts to rule on the divisibility of these incentives.

We also note that a federal district court has stated:

> The VSI/SSB program provides, to those members who qualify, incentive payments and medical and veterans benefits as inducements to elect early retirement.

<u>Elzie</u>, 841 F.Supp. at 440.

Like retirement, Stephen's eligibility for the SSB program was based on the number of years he served in active duty. 10 U.S.C. § 1174a(c). As with retirement pay, Stephen's separation pay was

calculated according to the number of years he was in active service. 10 U.S.C § 1174a(b)(2)(A). Stephen could have remained on active duty for five more years and received retirement pay. Instead, he chose voluntary separation from the military and received his compensation at an earlier date. For the reasons we have stated, we characterize separation pay received under the Special Separation Benefits program (10 U.S.C. § 1174a) as an election for early retirement.

We hold that payments received by a member of the military under the Special Separation Benefits program are an item of marital property subject to division by the dissolution court.

Il.

Did the District Court lose jurisdiction to change the property settlement provisions of the Decree when it failed to rule on the motion within forty-five days from the time it was filed?

Stephen states that under Rule 60(c), M.R.Civ.P., a motion for relief must be determined within the forty-five day period set out in Rule 59(d), M.R.Civ.P.; and that if the court fails to rule, the motion shall be deemed denied. He points out that the District Court did not rule upon Kathy's motion to modify the Decree within the 45 day period and was, therefore, beyond its jurisdiction.

Kathy emphasizes that her intention was not to modify the Decree as was stated in the title of the original petition but rather to enforce the same. Kathy cites § 1-3-219, MCA: "The law respects form less than substance." She argues that the substance of her motion clearly was for the District Court to force Stephen

8

to pay to Kathy her share of his retirement benefits, albeit early, as their original agreement stated. She argues, further, that the property **settlement** agreement provided for enforcement remedies; therefore, the District Court's jurisdiction continued in order to enforce the Decree.

The District Court found Stephen's actions in denying Kathy part of his separation pay to be unconscionable. Based on that unconscionability, the court reopened the Decree and ordered that Stephen pay to Kathy her percentage interest in his SSB pay.

Although we agree with the result of the District Court's conclusion, we note that the court mischaracterized the motion it had before it when it "reopened the Decree based on unconscionability." The motion was, in substance, a motion to clarify the terms of the agreement and to subsequently enforce them. We have held that the power inherent in every court to enforce its judgments and decrees "is not to be limited by the time limits in Rules 59 and 60, M.R.Civ.P." Smith v. Foss (1978), 177 Mont. 443, 447, 582 P.2d 329, 331. We conclude that the District Court was correct in treating the SSB program as early retirement divisible under its original Decree. We hold that the District Court did not lose its jurisdiction because it failed to rule on Kathy's motion in excess of forty-five days.

### III.

Was the District Court's decision barred by res judicata?

On April 28, 1993, the District Court found that the "MARITAL SETTLEMENT AGREEMENT signed by the parties is equitable and not

9

unconscionable, and should be incorporated into the decree of dissolution of marriage." Here, the District Court concluded "[Stephen] has voluntarily and unilaterally upset that division, which has resulted in a substantial detriment to the reasonable future expectations of [Kathy] and which will give [Stephen] an immediate and substantial windfall." (Emphasis added.) The court then found the result of Stephen's actions to be unconscionable.

Stephen points to the Commissioner's Notes to § 40-4-201, MCA, (Separation agreements) which says, "The court's determination, in the decree, that the terms are not unconscionable, under the ordinary rules of res judicata, will prevent a later successful claim of unconscionability." Stephen states further that case law clearly supports the application of the doctrine of res judicata to bar the reopening of a judgment on the grounds of unconscionability after a previous finding of a lack of unconscionability is made, and the agreement merged in the Decree. See Hopper v. Hopper (1979), 183 Mont. 543, 601 P.2d 29.

Stephen then lists the four criteria necessary to establish res judicata as set forth in Hopper.

(1) The parties or their privies must be the same;

(2) The subject matter of the action must be the same;

(3) The issues must be the same, and must relate to the same subject matter; and

(4) The capacities of the persons must be the same in reference to the subject-matter and to the issues before them.

Stephen argues that the four criteria are met, so the doctrine of res judicata barred a finding of unconscionability.

10

Kathy argues again that the District Court did not modify the Decree and did not reverse any findings. It enforced the division of Stephen's "net disposable military retirement pay." She contends that it was Stephen, through his announcement that he intended to retire early and deprive Kathy of her vested expectation interest in the future marital property, who attempted to modify the Decree/Property Settlement Agreement; thus, all the law cited by Stephen pertaining to the applicability of the doctrine of res judicata applies equally to him.

We state again that the motion was, in substance, a motion to enforce the Decree, not to modify the same. The District Court looked to unconscionability in order to reopen and then to modify the Decree under Marriage of Laskey (1992), 252 Mont. 369, 829 P.2d 935. In its conclusion, the District Court did not reverse its original finding of the settlement agreement as to unconscionability, but found Stephen's attempt to "voluntarily and unilaterally upset" that agreement was unconscionable.

Stephen is correct in that the parties, the subject matter, and the capacities of the parties are the same as those under the original Decree. However, the most important of the four criteria for res judicata is the identity of issues which is not present here. In re the Marriage of Harris (1980), 189 Mont. 509, 513, 616 P.2d 1099, 1101.

In the first case, the issue was how to divide the marital assets. The District Court incorporated Stephen's and Kathy's Property Settlement Agreement into its order dividing the marital

11

property as they suggested. Here, the issue differs in that the court was asked to determine whether or not payments Stephen received upon voluntarily separating from the military were the equivalent of "net disposable military retirement pay" under the Property Settlement Agreement per its original terms. This issue was not addressed in the Property Settlement Agreement nor in the Decree. On its face, the Decree did not identify whether or not voluntary separation pay was a form of net disposable military retirement pay. We conclude that the doctrine of res judicata does not apply where the issues were not previously addressed.

We hold that the District Court's decision was not barred by res judicata.

IV.

Did the District Court err when it did not order Stephen Blair to reimburse Kathy Blair for attorney fees?

Kathy did not address this issue in her motions nor at the hearing. We will not address issues raised for the first time on appeal. Hislop v. Cady (1993), 261 Mont. 243, 250, 862 P.2d 388, 392. The issue of attorney fees was not raised at the District Court level and, therefore, can not be raised here.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

12

_____

William E. Huntley

_____


_____


_____
Justices

Justice W. William Leaphart, specially concurring.


I concur in issues 2 and 4 of the majority opinion and specially concur in issues 1 and 3. I write separately for two reasons. The first is that I believe there is greater support than that mentioned in the majority opinion for the proposition that Special Separation Benefits (SSB) may be properly included in any marital estate. The second is that another appellate court in a similar case reviewed and upheld a trial court's order to enforce the decree based on the parties' property settlement agreement.

First, an Arizona appellate court has determined that SSB payments may be included in the marital estate. In re Marriage of Crawford (Ariz. Ct. App. 1994), 884 P.2d 210. In Marriage of Crawford, the court noted that there is legislative history to support the inclusion of SSB benefits in the marital estate. Specifically, the court stated:

> We find more relevant a 1990 House Report predating the enactment of the SSB program which in relation to the congressionally mandated "force drawdown" recommended "a comprehensive package of transition benefits to assist separating personnel and their families," H.R.Rep. No. 665, 101st Cong., 2d Sess. (1990) (emphasis added), suggesting that equitable division of SSB benefits is not inconsistent with congressional intent.

Marriage of Crawford, 884 P.2d at 212. The Crawford court also recognized, as does the majority opinion, that the Department of Defense pamphlet regarding SSB payments indicated that state courts would determine the divisibility of such payments.

Next, in a case similar to this one, a Florida appellate court determined that a property settlement agreement should be enforced

14

through the payment of early separation benefits.  In Abernethy v. Fishkin (Fla. Dist. Ct. App. 1994), 638 So.2d 160, the husband and wife had entered into a property settlement agreement which provided that the wife would receive 25% of the husband's military pension.  The  husband elected to leave the military before his retirement  vested and was paid benefits under the Voluntary Separation Incentive Program (VSI).  <u>Abernethy,</u> 638 So.2d at 161. The VSI and SSB programs are quite similar in that both provide qualifying  military  personnel who are voluntarily leaving the service before their retirement vests a payment,  or  payments, primarily based on the individual's ending salary and years of service.

The <u>Abernethy</u> court first cited <u>Marriage of Crawford</u> in determining that the trial court had correctly concluded that the husband's VSI benefits were subject to division.  <u>Abernethy,</u> 638 So.2d at 162.   The court went on to state that even assuming Congress had not authorized state courts to distribute these benefits,  it would affirm the trial court's order <u>enforcing</u> the parties' property settlement agreement.  Specifically, the court stated:

> the trial court's order does not purport to assign or award VSI benefits to the wife.  Instead, the order merely requires the husband to pay to the wife 25% of every VSI payment immediately upon its receipt in order to insure the wife a steady monthly payment pursuant to the terms of the parties' property settlement agreement.

<u>Abernethy,</u> 638 So.2d at 163.

In the present case, Kathy and Stephen entered into a property settlement agreement in which the parties agreed to a formula for

15

the division of Stephen's military retirement pay. Similar to the trial court's order discussed in <u>Abernethy,</u> the District Court's order in this case does not purport to assign Stephen's SSB benefits to Kathy, but orders him to pay her 40% (the percentage arrived at through the calculation agreed on in the property settlement agreement) of these monies immediately after he receives them.

As the Arizona court recognized in <u>Marriage of Crawford,</u> federal law does not preclude state courts from dividing SSB benefits in a dissolution proceeding. However, even assuming <u>arsuendo,</u> that it does, the fact is that Stephen, in the property settlement agreement, voluntarily agreed to divide his "net disposable military retirement pay." The property settlement agreement did not tie the phrase to any federal statute or program. In my opinion, the phrase "net disposable military retirement pay" is broad enough to encompass Stephen's voluntary early retirement under the SSB program. The District Court merely required Stephen to do that which he agreed to and that which the decree required.

_____
Justice

16

Justice Karla M. Gray, dissenting.

I respectfully dissent from the Court's opinion. The threshold and dispositive question in this case is whether the doctrine of res judicata bars the District Court from determining that the parties' property settlement agreement was unconscionable. Because that question must be answered in the affirmative, I would reverse the District Court.

The marriage of Steve and Kathy Blair was dissolved via findings of fact, conclusions of law and decree of dissolution entered by the District Court on April 28, 1993. The court expressly concluded that Steve and Kathy's Marital Settlement Agreement was not unconscionable and incorporated that Agreement into the decree of dissolution. One of the provisions of the Agreement was that Kathy would receive a share of Steve's future net disposable military retirement pay, calculated as set forth therein.

Approximately seventeen months after the decree of dissolution, the District Court concluded, in essence, that the Agreement was unconscionable. Notwithstanding its determination that Steve's military separation benefits were not "military retirement pay" covered by the Agreement, it reopened the decree to change the terms of the Agreement in order to provide Kathy with a share of Steve's military separation benefits. I conclude that, because of its earlier conscionability conclusion, the doctrine of res judicata barred the court from making an unconscionability determination.

17

The criteria necessary to establish res judicata are well-established in Montana:

1.  The parties or their privies must be the same;

2.  The subject matter of the action must be the same;

3. The issues must be the same and relate to the same subject matter; and

4.  The capacities of the persons must be the same in reference to the subject matter and issues before them.  Hopper v. Hopper (1979), 183 Mont. 543, 557, 601 P.2d 29, 36 (citation omitted).

Here, Kathy does not respond to the res judicata issue and, thereby, does not directly controvert it. Nor, on the basis of the record before us, could she present a persuasive argument that the criteria necessary for the application of the doctrine of res judicata are not met here.  There is no question but that the parties to the action are the same and that the subject matter--the conscionability, or lack thereof, of the Agreement--is the same. Likewise, the issues are the same, as are the capacities of Steve and Kathy in relation to the subject matter and the issues.

Hopper addressed the precise issue now before us: whether or not the district court had jurisdiction to determine the conscionability of the property settlement agreement which it had earlier, in the decree of dissolution, found to be not unconscionable.  We affirmed the district court's conclusion that a subsequent conscionability determination was prevented by the doctrine of res judicata. Hopper, 601 P.2d at 36. The same result

18

is compelled here.

In its determination to reach the result it seeks in this case, the Court mischaracterizes the nature of Kathy's motion in the District Court in order to recharacterize the District Court's statement that it had "reopened the Decree based on unconscionability." This Court's statement that the motion was one to clarify the terms of the agreement and, thereafter, merely to enforce it, is nonsense. Kathy's motion was a Motion for Order Modifying the Decree as to Retirement Benefits and it is this motion that the District Court granted, based on its unconscionability determination. The Court attempts to buttress its recharacterization of this case by concluding that the District Court "was correct in treating the SSB program as early retirement under its original Decree." The problem with this Court's "conclusion" is that the District Court did _not_ treat the SSB program as early retirement under its original decree; had it done so, it would not have been necessary to "reopen the Decree."

The salient facts are these: The parties' Agreement entitled Kathy to a share of Steve's military retirement pay. No alternative provision was made to deal with Steve's separation from the military prior to retiring, even though Kathy testified that she understood during settlement negotiations that Steve might leave the military prior to completing the full term of military service necessary to be eligible for retirement. The Agreement expressly stated that its purpose was "to provide for the equitable and fair division of the property of the parties," and that it

19

constituted full and final settlement based upon full disclosure of property and income. The Agreement, by its terms, "shall not be modifiable." This was the Agreement the District Court determined to be not unconscionable when it incorporated the Agreement into the decree of dissolution.

I would reverse the District Court's determination that unconscionability permitted it to reopen the decree and modify the terms of the Agreement to give Kathy a share of Steve's military separation benefits. The unconscionability determination is barred by the doctrine of res judicata, as is clear from Hopper and from the Commissioners' Note to § 40-4-201, MCA, which states that "the court's determination, in the decree, that the terms [of the agreement] are not unconscionable, under the ordinary rules of res adjudicata, will prevent a later successful claim of unconscionability." In remaking this case to reach a particular result, this Court undermines the purpose, importance and legislatively-intended finality of property settlement agreements voluntarily entered into by the parties, found conscionable by the court and incorporated in the decree; the Court also creates both unnecessary and incorrect inconsistency in its own cases. I cannot agree. I dissent.

_____
Justice

20

Justice James C. Nelson and Justice Terry N. Trieweiler join in the foregoing dissent of Justice Karla M. Gray

_____
Justice

_____
Justice